Allen, J.
 

 The judgment of the Court of Appeals was rendered upon the admissions and statements of counsel, no testimony whatever being taken. The facts, as they appear in these statements, are in general not disputed, and may be summed up as follows:
 

 In 1923, Jewel Galbraith was born in Cincinnati of Edna Mae Galbraith, an unmarried mother, a resident of Kentucky, while Edna Mae Galbraith was visiting her cousin in Cincinnati. The mother intrusted the child to Frances Kirk, daughter of a certain Mrs. Wand, with whom Frances Kirk was then living. Until the summer of 1926 the child lived in and was cared for in the home of Mrs. Wand. Mrs. Wand and Frances Kirk, her daughter, then had a dispute as to the custody of the child, and filed in the probate court counter petitions for its adoption. While these proceedings were pending, an affidavit of dependency was filed in the juvenile court by Carroll H. Lewis, superintendent of the Children’s Home of Cincinnati, setting up that Jewel Galbraith was a dependent child. In the affidavit filed, Lewis stated that he had made due inquiry of'the whereabouts of the mother, but was unable to find her. Thereupon the juvenile court
 
 *156
 
 addressed a letter, inclosing a copy of the notice of publication, to the mother in her maiden name, Edna Mae Galbraith, to 536 West Liberty street, Cincinnati, Ohio, which had been the home of her cousin at the time the baby in question was born, and had been the place where the mother stayed at the time of the birth of the child. The mother’s cousin, however, had moved from the address in question to another house in the neighborhood, a year or more before the letter was sent, and it was returned undelivered. Thereupon the juvenile court published a notice in the Commercial Tribune, a daily newspaper of Cincinnati, in which the mother was addressed in her maiden name.
 

 Edna Mae Galbraith was married in 1924 in Kentucky, where she now resides. Prior to the marriage, her husband was informed of the birth of Jewel Galbraith, and he joins the mother in seeking the custody of the child.
 

 It was stated by counsel for the mother, and expressly admitted in open court by counsel for the superintendent of the Children’s Home, that the juvenile court and Carroll H. Lewis relied upon the statement of Frances Kirk, who falsely told the officer of the juvenile court that she did not know the residence and address of the mother; that she, Frances Kirk, willfully concealed the matter from the juvenile court to mislead the court and the probation officer in charge of the proceedings, to prevent the juvenile court from serving a notice on the mother, and thereby informing her of the pendency of the proceedings; that Frances Kirk well knew at the time where the mother lived and what her post office address was, as she had
 
 *157
 
 communicated with, the mother from time to time and sent her pictures of the baby, who was' then in the care of Mr. and Mrs. Wand; and that on February 17, 1927, without the mother having had knowledge of any proceedings taken in the juvenile court to have the child declared a dependent, the juvenile court entered a judgment finding that Jewel Galbraith was a dependent and ordering her committed to the permanent custody of the Children’s Home of Cincinnati, Ohio. The mother first learned of the proceedings in the juvenile court in the week of March 7, 1927, whereupon she demanded the custody of the child from the superintendent of the Children’s Home. This demand was refused, and thereupon the mother instituted the present application for the writ of
 
 habeas corpus,
 
 claiming that the juvenile court was without jurisdiction to make such commitment, and that the judgment was entered arbitrarily, without trial or hearing.
 

 The section of the statute involved is Section 1648 of the General Code, the pertinent portions of which read as follows:
 

 “Upon filing of the complaint, a citation shall issue, requiring such minor to appear, and the parents or guardian or other person, if any, having custody or control of the child, or with whom it may be, to appear with the minor at a time and place to be stated in the citation. *
 
 * *
 
 Whenever it shall appear from affidavit that a parent or guardian or other person having the custody of such child resides or has gone out of the state or that his or her place of residence is unknown so that such citation cannot be served on him or her,
 
 *158
 
 the clerk shall cause such citation to be published once in a newspaper of general circulation throughout the county, and published in the county, if there be one so published. The citation shall state the nature of the complaint, and the time and place of the hearing, which shall be held at least two weeks later than the date of the publication; and a copy of such citation shall be sent by mail to the last known address of such parent, guardian or other person having custody of such child, unless said affidavit shows that a reasonable effort has been made without success to ascertain such address. The certificate of the clerk that such publication has been made or such citation mailed shall be sufficient evidence thereof.”
 

 The plaintiff in error contends that the judgment of the Court of Appeals must be reversed upon the ground that this
 
 habeas corpus
 
 proceeding constitutes a collateral attack upon the judgment of the juvenile court, and hence cannot be sustained except for want of jurisdiction. It is contended that the juvenile court had jurisdiction of the subject-matter and of the child, and, therefore, even though the judgment was procured by fraud, it must stand until set aside in a proceeding brought directly for that purpose. The mother could have filed a petition in the juvenile court to vacate its judgment of commitment. State,
 
 ex rel. Tailford,
 
 v.
 
 Bristline, Judge,
 
 96 Ohio St., 581, 119 N. E., 138. But can she impeach that judgment in this
 
 habeas corpus
 
 proceeding?
 

 Plaintiff in error claims that a judgment valid on its face is here attacked collaterally. This judgment is not given in detail in the record, never
 
 *159
 
 having been offered in evidence, and comes before us only by the admissions and statements of counsel. We do not have the finding of the juvenile court upon the jurisdictional facts necessary to the validity of the judgment of commitment. However, counsel for the mother, in the Court of Appeals, did state that the juvenile court had entered a judgment of commitment, and did not claim that this judgment was not valid upon its face. Assuming, therefore, that such a judgment does exist and is valid upon its face, we next consider the question whether or not that judgment can be attacked .in this
 
 habeas corpus
 
 proceeding.
 

 There is authority to the effect that a valid judgment cannot be attacked in
 
 habeas corpus
 
 proceedings, for the reason that such an attack is collateral, and plaintiff in error plants himself upon that doctrine in urging that the judgment of the Court of Appeals must be reversed. The cases cited do not, however, raise the question of fraud in the procurement of a judgment, nor of void judgment. In the case of
 
 Children’s Home
 
 v.
 
 Fetter,
 
 90 Ohio St., 110, 106 N. E., 761, it is stated in the syllabus that no fraud has intervened.
 

 We question that this attack upon the judgment is collateral. Surely, when the very premise upon which the judgment is founded is based on fraud, so that the jurisdictional basis of the judgment is lacking, proof of that fact is an attack upon the judgment itself, exactly as if an original proceeding had been brought for the purpose of setting aside the judgment. The petition avers that the order of commitment is void, that is, that no judgment exists, and prays for the writ upon
 
 *160
 
 that precise ground. Is not such a
 
 habeas carpus
 
 proceeding necessarily a suit which has for its direct purpose' a declaration by the Court of Appeals that the judgment of commitment was void
 
 ab initio
 
 ?
 

 It has been held in this state
 
 (Kingsborough
 
 v.
 
 Tousley,
 
 56 Ohio St., 450, 47 N. E., 541) that an attack upon .a personal judgment, upon the ground that the defendant was not served with process, nor jurisdiction of his person otherwise obtained, is not a collateral impeachment of the judgment, but is in the nature of a direct attack upon the judgment.
 

 Rarey
 
 v.
 
 Schmidt,
 
 115 Ohio St., 518, 154 N. E., 914, holds that where a minor child has neither legal guardian nor a custodian created by operation of law or by judicial order, judgment, or decree, other than a parent, and the residence of such parent is known, service, actual or constructive, must be had upon such parent before a juvenile court has jurisdiction to declare such child a dependent child.
 

 In the case at bar, a constructive notice was given, but it was grounded in fraud; notice was made by publication, and a judgment of commitment procured; fraud was perpetrated upon the court, and the judgment was therefore a nullity.
 

 In 2 Pomeroy’s Equity Jurisprudence (4th Ed.), Section 919, the rule is stated as follows:
 

 “When a judgment or decree of any court, whether inferior or superior, has been obtained by fraud, the fraud is regarded as perpetrated upon the court as well as upon the injured party. The judgment is a mere nullity, and it may be attacked
 
 *161
 
 and defeated on account of the fraud, in any collateral proceeding brought upon it or to enforce it, at least in the same court in which it was rendered.”
 

 The same section further states that when a judgment fraudulently recovéred in one court is sued upon in another court, it has been questioned whether the fraud can there be set up to defeat the enforcement of the judgment sued upon. This, however, is not a suit upon a judgment fraudulently recovered. It is an application for
 
 habeas corpus,
 
 brought upon the express ground that the judgment in question is a nullity and that the child is wrongfully restrained of her liberty, because no judgment exists. How could an attack upon a judgment be more direct? Does not the
 
 habeas corpus
 
 proceeding, in addition to seeking to obtain the custody of the child, constitute in effect an attempt to vacate the judgment of commitment in a proceeding brought for that purpose?
 

 It is a rule frequently declared in adoption cases that unless a parent has forfeited his rights in relation to his child by some misconduct he is entitled to notice of proceedings, and that in the absence of such notice the proceedings are invalid as against the parent.
 
 In re Carter,
 
 77 Kan., 765, 93 P., 584;
 
 Ex parte Livingston,
 
 151 App. Div., 1, 135 N. T. S., 328;
 
 Beatty
 
 v.
 
 Davenport,
 
 45 Wash., 555, 88 P., 1109, 122 Am. St. Rep., 937, 13 Ann. Cas., 585;
 
 Taber
 
 v.
 
 Douglass,
 
 101 Me., 363, 64 A., 653;
 
 Furgeson
 
 v.
 
 Jones,
 
 17 Or., 204, 20 P., 842, 3 L. R. A., 620, 11 Am. St. Rep., 808.
 

 The general proposition laid down in these decisions is that in the absence of notice, either
 
 *162
 
 actual or constructive, to the parents, a judgment of adoption is void. These holdings are based upon the theory that the parent is necessarily a party to the proceedings, and unless the parent receives notice, jurisdiction of the court does not attach so as to render a judgment in such proceedings valid as against the parent.
 

 We see no real distinction between this rule applied in adoption cases and the rule which should be applied as to this judgment of permanent commitment by the juvenile court. In each case the natural parent of the child is divested of the custody of the child by court order, and this court order depends for its validity upon compliance with the statute.
 

 It is true that in these cases the doctrine is that notice, either actual or constructive, must be shown, and in the instant case constructive notice was given.
 

 However, in this instance, Section 1648 of the General Code prescribes the prerequisites to jurisdiction. One of these prerequisites is that a parent shall be notified if his or her whereabouts are known. If the parent is within the state and his whereabouts are known, he is to be cited to appear. If the parent is out of the state and his whereabouts are known, he is to have a copy of the citation mailed to him at his last known address, two weeks prior to the hearing. In the instant case Edna Mae Galbraith, at the time of the dependency proceedings, was residing in Kentucky, but if her true address had been revealed to the juvenile court by those who knew it, she would have received a copy of the citation mailed to her in
 
 *163
 
 Kentucky, and would therefore have had actual notice of the proceedings. Edna Mae Galbraith’s whereabouts were known to the parties interviewed in this case; her whereabouts were known to the parties who were seeking custody of the child, whose petitions in the probate court brought on the reference of this case to the juvenile court. With a little more extensive investigation, her residence could have been found by the agents of the juvenile court. The statute placed her in the position of a necessary party, but she received, no notice whatever. The constructive notice was based upon actual and conceded fraud, and hence of no effect.
 

 The question as to whether the mother was a necessary party in the dependency proceeding was not argued by counsel herein. However, whether the mother be a necessary party who received no notice of the proceedings, in compliance with the statute, or whether she be not a party to the proceeding, the plaintiff in error finds himself in a dilemma. If the mother was not a necessary party to the proceedings, she may collaterally attack the judgment of the juvenile court for fraud in its procurement, for it is the rule in this state that one not a party to the judgment may collaterally attack a judgment for fraud perpetrated upon the court in the securing of the judgment.
 
 Conway
 
 v.
 
 Duncan, Adm’r.,
 
 28 Ohio St., 102;
 
 Sidener
 
 v.
 
 Hawes,
 
 37 Ohio St., 532. If the mother was a necessary party, she can attack the' judgment in this
 
 habeas corpus
 
 proceeding, for the proceedings are void as to her for lack of notice.
 

 Applying these doctrines to the instant case,
 
 *164
 
 the judgment is void because jurisdiction never attached in the dependency proceedings, and hence the judgment of commitment may be attacked herein.
 

 We find two Indiana cases which shed much light upon the instant question. The first is the case of
 
 Lee and Wife
 
 v.
 
 Back,
 
 30 Ind., 148, the syllabus of which reads:
 

 “A judgment, the effect of which is to deprive a father of the right to the custody of his infant child, without jurisdiction of the person of the father having been acquired by notice, is void.
 

 “A
 
 stranger to a judgment, may attack it in a collateral proceeding for fraud used in obtaining it.”
 

 The second is the decision in
 
 Glansman
 
 v.
 
 Led-better,
 
 190 Ind., 505 (130 N. E., 230), which holds as follows, in paragraphs 12 and 13 of the syllabus:
 

 “(12) An attack upon a judgment for fraud in its procurement is regarded, not as a collateral attack, but as a direct attack, which is permitted, notwithstanding the judgment questioned may appear on its face regular and valid, for only in rare instances would the judgment itself disclose the fraud upon the parties or upon the court.
 

 “(13) In a
 
 habeas corpus
 
 proceeding by the mother to obtain the custody of her illegitimate child from respondents, in whose care the child had been left, and who had adopted it, held that, as respondents gave only constructive notice pursuant to Section 3098, Burns’ 1914, Acts 1913, p. 600, the judgment of adoption was not conclusive, but was open to attack for want of jurisdiction on account of respondents’ fraud in stating that the mother’s
 
 *165
 
 whereabouts were unknown, etc., when they well knew how to and had often communicated with her, etc., thereby procuring notice by publication.”
 

 As it is conceded by both parties to this action that actual fraud did exist in the procurement of this judgment, and as such fraud can be shown in this proceeding, the parent not having been notified in compliance with the statute, the jurisdiction of the juvenile court never attached, the judgment of commitment was void in its inception, and the judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Kinkade, Robinson and .Matthias, JJ., concur.