**FLICKINGER, In Re**

Common Pleas Court, Delaware Co.

No. 13268. Decided June 19, 1940.

Frank C. Leyshon, Cambridge, for the petitioner.

Thomas J. Herbert, Atty. Gen., Columbus; D. C. VanBuren, Asst. Atty. Gen., Columbus, for the respondent.

## OPINION

By WICKHAM, J.

This is an action in habeas corpus by Hazel Flickinger Joyce against Rose C. Beatty, Superintendent of the Girls' Industrial School of this county, to regain the custody of her daughter Bernice Flickinger, whom she claims is illegally deprived of her liberty by the respondent. The evidence in this case shows that Bernice Flickinger a minor, became seventeen years of age in March, 1940. Her mother, the petitioner, had custody of the girl under a divorce decree and the girl was living at her home. On September 4, 1939, Bernice was taken into custody by Wilmer O. Oliver, Probation Officer of the Juvenile Court of Guernsey County, Ohio, and held in the county detention home without any charges of any kind being filed. During the ensuing week he contacted the girl's mother and orally advised her that the girl would probably be sentenced to the Girls' Industrial School.

On September 11, 1939, the said Probation Officer swore to a complaint before the Juvenile Judge charging Bernice with being a delinquent child. The name and address of the mother was contained in the affidavit, but no writ, legal notice or other process, actual or constructive was given the mother after the filing of the complaint; she was not in any way advised of the pendency of the charges and first learned that charges had been filed after the order for her daughter's commitment had been made. On the same day the Juvenile Judge heard the case, found the child to be delinquent, and ordered her committed to the Girls' Industrial School at Delaware, Ohio. She was on the same day taken to the institution and the return of the Superintendent shows that she has had custody of the girl since September 11, 1939, by virtue of the order of commitment issued by the Judge of the Juvenile Court of Guernsey County, Ohio, dated September 11, 1939.

It is not within the scope of inquiry of this Court to determine whether or not the girl is or was, in fact, a delinquent child. If she was legally committed by a Court of competent jurisdiction she must stay where she is as far as this Court is concerned regardless of her guilt or innocence, and by the same token, if she was not legally committed, and if the order of commitment was made without jurisdiction, the writ prayed for should issue, regardless of whether or not she was a delinquent child.

The commitment was ostensibly made under authority of §1639-24 GC which, as amended effective August 19, 1937, reads as follows:

"After a complaint shall have been filed and after such further investigation as the court may direct, unless the parties voluntarily appear, the court shall issue a citation reciting briefly the substance of the complaint and requiring the parents, guardian, or the person or persons who have the custody or control of the child, or with whom it may be. to appear personally and bring the child before the court at the time and place stated.

"If the person so cited shall be other than the parent or guardian of the child, then the parent or guardian, or both, shall also be notified of the pendency of the case and of the time and place of hearing.

\* \* \*

"If it appears that the child is in such conditions or surroundings that his welfare requires that his custody be immediately assumed by the court, the judge may cause to be endorsed upon the citation an order that the officer serving the same shall take the child into custody at once."

Sec. 1639-25 GC reads as follows:

"Service of citations, notices and subpoenas shall be made personally by the delivery of attested copies thereof to the persons cited, notified or subpoenaed; provided, that if the judge is satisfied that it is impractical to personally serve such citation, notice or subpoena, he may order service by registered mail.

"Whenever it shall appear from affidavit that a parent or guardian or other person having the custody of such child resides or has gone out of the state or that his or her place of residence is unknown so that such citation cannot be served on him or her, the clerk shall cause such citation to be published once in a newspaper of general circulation throughout the county, and published in the county, if there be one so published. The citation shall state the substance and the time and place of the hearing, which shall be held at least one week later than the date of the publication; and a copy of such citation shall be sent by mail to the last known address of such parent, guardian or other person having custody of such child, unless said affidavit shows that a reasonable effort has been made without success to ascertain such address. The certificate of the clerk that such publication has been made or such citation mailed shall be sufficient evidence thereof. When such period of one week from the time of publication shall have elapsed, said court shall have full jurisdiction to deal with such child as provided by this chapter."

In **Rarey v Schmidt, 115 Oh St 518,** 154 N.E. 914, decided December 28, 1926, the case was one begun as a collateral attack in Common Pleas Court on an order of the Juvenile Court adjudging a minor a dependent child, changing her name and granting adoption to the defendant, the attack being made on the ground that the Juvenile Court did not acquire jurisdiction because no citation or notice, actual or constructive, was served on the mother. It was held that such notice was necessary to jurisdiction in the Juvenile Court, and that the parent was entitled to legal notice, without which the judgment was void **ab initio** and subject to collateral attack. In the course of the opinion Judge Robinson pointed out that the provision for service by publication where actual service could not be made indicated that the citation of a parent was not a matter of minor consideration in the composite mind of the Legislature.

In **Lewis v Reed, 117 Oh St 152, 157** N. E. 897, decided June 22, 1927, an action of habeas corpus was commenced in the Court of Appeals by a mother to regain custody of her child committed to a Children's Home as a dependent child. The mother was served by publication in her maiden name although her true name and address were known to the informant and not disclosed to the Court. It was held that no jurisdiction over the child attaches until notice to the mother was given and that the fraud here perpetrated upon the court vitiated the constructive notice attempted to be given.

In **State ex rel v Moloney, Sheriff, 126 Oh St 526, 186 N. E. 362,** decided April 26, 1933, a minor who had shot and killed his father was arrested and warrant issued after a complaint was filed in Juvenile Court charging him with being a delinquent. No notice or citation to the surviving parent or custodian was given. The minor himself sought a writ of habeas corpus. In holding that the writ did not lie, the court pointed out that the code section then in effect, and then known as **§1648,** provided that:

"Upon filing of the complaint, a citation shall issue, requiring such minor to appear, and the parents or guardian or other person, if any, having custody or control of the child or with whom it may be, to appear with the minor at a time and place to be stated in the citation; **or the judge may in the first instance, issue a warrant for the arrest of such minor or for any person named in the complaint and charged therein with having abused or abandoned, or charged therein with neglect of or being responsible for or having encouraged, aided or abetted the delinquency or dependency of such child, or having acted in a way tending to cause delinquency in such child.**" (Emphasis mine).

The decision apparently was based upon the way the statute was worded at that time, but it is to be noted that since this decision the statute has been amended to eliminate the part upon which that decision rested. It must be presumed that the Legislature, in so amending the statute, intended to eliminate the result arrived at in that case.

In **Ex Parte Province, 127 Oh St 333, 188 N. E. 550,** decided December 13, 1933, it was held that while by the statute then existing the mother of a child was entitled to notice, actual or constructive, of proceedings upon complaints of dependency instituted in the Juvenile Court with reference to such child, that where the mother voluntarily appeared and attended the hearing, it constituted a waiver of all prior service of process, and that a writ of habeas corpus sought by the mother should be denied.

Thus it may be seen that the only case where notice to the parent has not been held essential to jurisdiction is the Heth case, supra, and that depended upon a statutory exception which has since been eliminated.

Counsel for the Superintendent rely upon the case of **Bleyer v Krause, 13 Oh Ap 69,** where it was held that service of citation upon the parent of a child in a dependency proceeding is not a condition precedent to jurisdiction over the child, and that habeas corpus cannot be maintained to secure custody of a child committed by the Juvenile Court as a dependent. Suffice it to say that this case, decided June 28, 1920, is by implication overruled by Rarey v Schmidt, supra, Lewis v Reed, supra, and Ex Parte Province, supra.

An interesting annotation on this subject may be found in 76 A. L. R. 242, where a large number of cases are collected. It is there stated, on page 247:

"It has been uniformly held in cases based on statute and principle, that a parent cannot be deprived of the custody of a child in commitment proceedings, without notice and an opportunity to be heard."

Some of these cases present interesting points on the subject, as, for instance, in Kennedy v Meara, 127 Ga. 68, 56 S. E. 243, 9 Ann. Cas. 396, it was said:

"The parent cannot be deprived of his property right in the labor and services of the minor child except by due process of law. The parent may, by his conduct, forfeit his right to the custody of his minor child, but this forfeiture cannot become effective until the parent has been accorded a right to be heard on the question as to whether a forfeiture has taken place. Hence in any provision made by the law for the taking out of the custody of the parent of a minor child, unless the parent is given a reasonable opportunity to be heard on the question as to whether the conditions are such that the state should deprive him, either temporarily or until the child becomes of full age, of his custody and services and labor, the parent would be, under the operation of such proceeding, deprived of his property without due process of law."

And in Heber v Drake, 1918, 68 Ind. App. 448, 118 N. E. 864, the Court said:

"The object of the act is not punishment, but reformation, discipline and education, and to provide for the proper custody of children within certain age limits who, on account of neglect of their parents or for other causes, were in need of proper guardianship. While the courts have recognized this to be the primary purpose of the law, they have also consistently recognized the fundamental proposition that every parent is entitled to have the care and custody of his own child, and this right can only be taken from him when it is made to appear that some law enacted by the state for the child's welfare and the welfare of society has been disobeyed by him; that these questions are to be determined only after such parent has been given the opportunity of answering any charges which may be filed against him respecting such matters."

In Ex Parte Becknell, (1897) 119 Cal. 496, 51 Pac. 692, where a boy under fourteen years of age, charged with burglary, was committed to the care and guardianship of a state reform school for juvenile offenders, the order of the court was declared void as an award of guardianship, for his parents, being his natural guardians, could not be deprived of their right to his care, custody, society and services except by a proceeding to which they were made parties, and in which it was shown that they were unfit or unwilling or unable to perform their parental duties.

Many other interesting cases are contained in the annotation which clearly show that by the overwhelming weight of authority, regular legal ▆▆▆▆▆ ▆ notice by service of process on the parent is an indispensable prerequisite to jurisdiction of the Juvenile Court to make commitment of a minor child in cases such as the one at bar.

It is contended that the mother was advised while the girl was being held in jail without any charges whatever being pending, that a hearing would be had on September 11, 1939, and that the Judge would probably send her to Delaware. How this officer could know, before any complaint had been filed in the Juvenile Court, as to when the hearing would be had and what disposition would probably be made of it, is one that taxes the imagination. Suffice it to say, that if he did know, in advance of any complaint being made, when a hearing would be had and what disposition would be made of it, he knew far more than it would be proper for him to know for the good of the administration of justice.

The knowledge by the mother that the girl was being held and that a complaint might or even ▆▆▆▆▆ ▆ probably would be made is not sufficient, because §1639-25 GC specifically requires that service of citations, notices and subpoenaes shall be made personally by delivery of the attested copies thereof to the persons cited. That provision indicates that a regular writ shall be handed to the one given notice. There is no claim here that any such notice was given.

The argument that the mother should have done something about the matter after she found that the ▆▆▆▆▆ ▆ commitment order had been made, is of no effect. If the order was entirely void, as I hold that it was, she was not duty bound to do anything about the matter because a wholly void order, being an absolute nullity, could not operate to her prejudice. The foregoing authorities clearly establish that the proceedings under which this girl is being held in custody were a complete nullity for lack of jurisdiction over the person, and, accordingly, the writ of habeas corpus must be granted.