MOBLEY, PETITIONER, *v.* ALLAMAN, SUPT., RESPONDENT.

Probate Court, Montgomery County.

No. 152684.   Decided June 5, 1961.

474

*Mr. Melvyn A. Scott*, for petitioner.

*Mr. Paul H. Young*, prosecuting attorney, by *Mr. Anthony Valen*, assistant prosecuting attorney, for respondent.

ZIEGEL, J., of Preble County, sitting by assignment in Montgomery County.

ZIEGEL, J.  Petitioner for this writ of habeas corpus is the father of Mark Anthony (Spradlin) Mobley, now a four year old boy, who by order of the Juvenile Court dated January 6, 1959, was committed to the permanent custody of the Montgomery County Child Welfare Board.  The respondent is the Superintendent of Shawan Acres, a childrens' home maintained by said board, and also the executive secretary of said Board. Petitioner alleges that the respondent is unlawfully depriving him of the custody of this child, contending that the order of the juvenile court committing the child to the permanent custody of the Board is void for the reason that he, as the father of said child, was not served with any notice of the time and place of the hearing, as required by Section 2151.28, Revised

Code. This Section provides, inter alia, that ''Before any temporary commitment is made permanent, the court shall fix a time and place for hearing and shall cause notice thereof to be served upon the parent or guardian of the child . . . .''

From the exhibits, which include a part of the record of the juvenile court as well as a transcript of the testimony taken at the hearing before that court, and the stipulations of counsel, it appears that on February 15, 1957, Mark Anthony was found to be a neglected child and placed in the temporary custody of the Montgomery County Child Welfare Board. No complaint is made as to the validity of this proceedings, and it must therefore be assumed that this temporary order was lawful and proper. On October 22, 1958, the Board filed a motion for permanent custody, which came on for hearing on November 4, 1958, the order issued on said motion being the basis for the present controversy.

At the outset it seemed that arriving at a decision in this case would be relatively simple. Habeas corpus, as used here, is a special remedy available to one entitled to the custody of another, of which custody such person is unlawfully deprived. Section 2725.01, Revised Code. Section 2725.05, Revised Code, provides that ''if it appears that a person alleged to be restrained of his liberty is in the custody of an officer . . . . by virtue of the judgment or order of a court of record, and that the court . . . . had jurisdiction to . . . . render the judgment, or make the order, the writ of habeas corpus shall not be allowed . . . .'' In view of the provision of Section 2151.38, Revised Code, which determines that a temporary commitment ''shall continue for such period as designated by the court in its order, or until terminated or modified by the court, or until a child attains the age of twenty-one years,'' it occurred to this Court that even if the order of permanent commitment issued on January 6, 1959, were void, in that case the order of temporary commitment journalized on February 15, 1957, the validity of which is not in question, would still be in full force and effect, and that therefore, in either case, the respondent would have unlawful custody of Mark Anthony. If respondent has lawful custody, the writ would have to be denied.

The foregoing theoretical analysis, however constitutes the dissenting opinion of Judge Taft in *In re Frinzl*, 152 Ohio St.,

164, 39 Ohio Opinions, 456, 87 N. E. (2d), 563. That case also started as a petition for a writ of habeas corpus. As in the case at bar an adjudication of dependency and a temporary commitment, the validity of which was not questioned, preceded the motion for permanent custody. The petition for the writ there likewise was based on failure of notice on the motion. The majority opinion of the Supreme Court affirmed the Court of Appeals which reversed the Common Pleas Court, and held that there was a failure of notice which was a violation of petitioner's constitutional right of due process. Without refering at all to the temporary order, and without in any way stating that the writ of habeas corpus should be granted, the majority held that the child should be discharged from the *permanent* custody of the Cuyahoga County Child Welfare Board. The word "permanent" is italicized in the printed report of Judge Stewart's majority opinion. Does this mean that the Court discharged the child in question only from the permanent custody of the Child Welfare Board, leaving the previous order of temporary custody still standing? If so, is not this a peculiar way to use a writ of habeas corpus—where a writ is allowed, but there is no actual award of custody to the petitioner?

Whatever the ultimate meaning of this *Frinzl case* might be, suffice it now to say that its holding does require this Court to examine the validity of the order of permanent custody in this petition for habeas corpus even though there was a previously issued and completely valid order of temporary custody. In the instant case, Mark Anthony, the child in question, was born out of wedlock. On October 22, 1958, when the Child Welfare Board filed its motion for permanent custody, its mother was its sole parent, and the only person entitled to notice of the hearing on the motion. On October 23, 1958, personal service was made upon Mark Anthony's mother, notifying her in proper manner that the motion would come on for hearing on November 4, 1958. On this same October 23rd, coincidentally and without any reference to the then pending motion, Mark Anthony's mother married his father. On November 4th, prior to coming to the Juvenile Court for the hearing, these parents went to the office of Russell L. Carter, a lawyer, to discuss the forthcoming hearing. While there, Robert J. Mobley, the father, executed a declaration of paternity as provided by Section

2105.18, Revised Code, which declaration was forwarded to the Ohio Department of Health, Division of Vital Statistics, and a new birth certificate issued by that Department on November 10, 1958, as provided in Section 3705.15, Revised Code. Thereafter, both parents and Lawyer Carter went to the juvenile court for the hearing. Mr. Mobley was never served with any formal notice of the pendency of these proceedings, but according to the stenographic transcript of the proceedings before the juvenile judge, Robert Mobley was present and did testify. While Mr. Carter advised the juvenile court that the parents of the child in question were now married, re requested no continuance so that the father could be served. In his remarks concerning the situation to the judge, Mr. Carter repeatedly used the words "they," "them," and "the *parties*" speaking on behalf of both of these parties not just the mother. At the instant hearing for the writ of habeas corpus, Mobley testified that Carter did not represent him, but only represented his wife in the proceedings in the juvenile court. He also testified, however, that Carter had represented him in the past, particularly in a bankruptcy proceedings, and that he was the one who introduced his wife to Carter and recommended that she employ him as counsel in this matter.

It is well settled that the notice provision of the Juvenile court code (Chapter 2151, Revised Code), must be complied with before the court acquires jurisdiction to make any orders respecting any child before it. Parents are necessary parties to any proceedings concerning a child in the juvenile court and must either be served with required citations or notices, or must enter their appearance in some other manner. *Lewis* v. *Reed*, 117 Ohio St., 152, 157 N. E., 897; *Ex Parte Province*, 127 Ohio St., 333, 188 N. E., 550; *In re Corey*, 145 Ohio St., 413, 31 Ohio Opinions, 35, 61 N. E. (2d), 892; *In re Frinzl*, cited supra, *In re McLean*, 65 Ohio App., 106, 18 Ohio Opinions, 327, 29 N. E. (2d), 425. It is also well settled in Ohio that an appearance for any purpose, except to object to the jurisdiction over the person, constitutes a submission to the jurisdiction of the court. Appearance in court or participation in the trial subjects the defendant to the court's jurisdiction. See article by Professor Andrews of Western Reserve University College of Law, 11 Un. Cin. L. R., 416. A court acquires jurisdiction over the per-

son of a defendant either by service of process upon him, whereby he is brought into court against his will, or by his voluntary appearance and submission. 2 Ohio Jurisprudence (2d), 497.

The cases cited in the preceding paragraph all deal with situations arising out of juvenile court action. In all cases except the *Province case* the order of the juvenile court was held to be void ab initio because of failure of notice. In the *Corey case* and the *McLean case*, there was no notice or entry of appearance of any kind. In *Lewis* v. *Reed* notice was given by publication, but the Court found that such notice was ineffective since the complainant fraudulently concealed the known whereabouts of the child's mother. The *Province case* and the *Frinzl case* are similar in that in each of them there was no actual service of notice or citation, and in that in each case the petitioner for habeas corpus was actually physically present in court at the time of the hearing or trial. In these respects these two cases are similar to the one at bar, but the Supreme Court reached a different conclusion in one than in the other.

Upon the distinction between these two cases rests the present decision. In each of these cases, as in the instant case, an order of temporary custody preceded a motion for permanent custody. The issue there as here was whether the order of permanent custody was valid, and in each the matter was brought to the attention of the court upon a petition for a writ of habeas corpus. The *Province case* was decided on a motion for judgment on the pleadings, which embodied the entry of the juvenile court. While no citation or notice was served, there the mother of the child appeared in court with an attorney who participated in the hearing. In sustaining the motion for judgment on the pleadings the Supreme Court held that the mother voluntarily appeared and had her day in court.

In the *Frinzl case*, the mother of the child there in question was served with a citation to appear for a hearing on a motion for permanent custody an hour before the hearing on such motion was had. She testified that a couple of days before that time a social worker telephoned her to come to the court on the day of the hearing, but did not notify her of the nature of the proceedings. The Supreme Court held, as stated in paragraph 4, of its syllabus, that "Where the only notice given to the mother of an adjudged dependent child, of a hearing to change such

child's temporary commitment to a permanent one, was served on the mother within an hour before such hearing and she had no opportunity between the time of being served with the notice and the time of the hearing, to either prepare for such hearing or to engage counsel to represent her, such notice is insufficient in law and an order for permanent custody made at such hearing is void for want of jurisdiction of the court in making it. . . ." In commenting on the *Province case*, Judge Stewart, writing the majority opinion, stated that "the *Province case* is readily distinguishable from the present one in that in that case, though there was no service of citation upon the mother, she voluntarily appeared and was represented by counsel who participated in the hearing."

Since notice served an hour before hearing is the equivalent of no notice at all, the distinction between the *Province case* and the *Frinzl case* must rest upon the fact that in the *Province case* the mother of the child not only voluntarily appeared in court, but appeared with counsel who participated in the hearing. Thus, she must have known enough about the nature of the hearing in advance thereof to employ and consult with a lawyer, factors not present in the *Frinzl case*. In the instant case the petitioner undoubtedly knew that a hearing was to be held and its nature as early as October 23rd, the day his wife was served with citation and the day he married her. Petitioner testified that on November 4th, the day of the hearing, and prior thereto, he went with his wife to Carter's office and that while there he participated in the discussion of the forthcoming hearing. According to the transcript he testified at the hearing and Attorney Carter spoke on behalf of both parties, the petitioner as well as his wife. Under this state of fact this court now holds that the rule of the *Province case* applies here, and that the petitioner voluntarily appeared and submitted himself to the jurisdiction of the juvenile court. The juvenile court, therefore, having acquired jurisdiction over the parties, the order of permanent custody therein issued is valid insofar as this proceedings in habeas corpus is concerned.

After the hearing on November 4th an unfortunate situation occurred, but this Court does not think that the validity of the order of permanent custody is affected thereby. At the end of the November 4th hearing the juvenile judge advised all

persons present that he was taking the case under advisement. Thereafter, on January 6th an order granting permanent custody was journalized, nunc pro tunc as of December 4th. Why a nunc pro tunc order was entered does not appear from either the testimony or the record of proceedings in the juvenile court. At any rate, neither counsel nor these parties were notified at the time that the case had been decided or an order journalized. Petitioner and his wife testified that neither of them knew anything about the judge having rendered his decision until August, 1960, over nineteen months later, when they inquired about having the child returned to them. According to respondent, notes of a child welfare board caseworker indicate that petitioner was notified of the decision sometime in March, 1959. Either date is more than the twenty days after the journalizing of the order of permanent custody during which an appeal may be perfected, in the manner provided in Section 2505.05, Revised Code.

Failure to notify either counsel or the parties as to the journalized decision of the court is not only unfortunate and regrettable: it is also condemnable. Common as well as professional courtesy requires that litigants and their counsel be advised of a court's decision in any matter pending before the court in which they are interested. Neither counsel nor a litigant should be required to make a daily check of a court's docket and journal to see whether any decision adverse to them might have been made of record. Yet, as this Court views the matter, failure of a court to announce publicly its decision in a pending case does not vitiate the decision. Regardless of the improper and thoughtless tactics that may have been employed here in failure to notify those concerned of the entry of the order of permanent placement, the validity of the decision is not thereby affected. Conceivably, some relief should be granted to a party so aggrieved insofar as the mandatory requirements of the statute on time for perfecting an appeal are concerned. Habeas corpus is, however, not an appellate procedure.

The writ of habeas corpus will be denied.