### In re SHAEFFER CHILDREN.

[Cite as *In re Shaeffer Children* (1993), 85 Ohio App.3d 683.]

Court of Appeals of Ohio,
Van Wert County.

No. 15–92–11.

Decided March 30, 1993.

684

*Stephen P. Gehres,* for appellant Terry Shaeffer.

*Eva Yarger,* for appellant Kim Shaeffer.

*Kevin Taylor,* Van Wert Assistant Prosecuting Attorney, for appellee, Van Wert County Dept. of Human Services.

*Douglas Koch,* guardian *ad litem* for Tina and Ashley Shaeffer.

---

SHAW, Judge.

Kim Shaeffer and Terry Shaeffer separately appeal the judgment of the Van Wert County Common Pleas Court, Juvenile Division, granting permanent custody of two minor children, Tina Shaeffer and Ashley Shaeffer, to the Van Wert County Department of Human Services ("DHS").

Kim Shaeffer is the biological mother of both Tina and Ashley. Terry Shaeffer, Kim's ex-husband, is the biological father of Tina. The second child, Ashley, was born after Kim and Terry divorced, as the result of an alleged rape, and her father is unknown.

On March 28, 1991, DHS filed a petition alleging that the children were dependent. An adjudicatory hearing was held on May 6, 1991. The trial court found the children to be dependent due to the mother's inability to care for the children and the father's lack of concern and support. A dispositional hearing was held on June 26, 1991 and the court ordered that temporary custody of the children be granted to DHS.

On April 22, 1992, DHS filed a motion for permanent custody, so that the children could be put up for adoption. A hearing on the motion was held on May 7 and 8, 1992. By entry filed May 15, 1992, the trial court granted DHS's motion for permanent custody.

■ The parents thereafter filed these separate appeals. In her appeal, Kim Shaeffer raises four assignments of error. Her first assignment of error is as follows:

"The trial court erred in finding that the Van Wert Department of Human Services' tentatively worded motion requesting modification of temporary custody to permanent custody provided adequate notice."

R.C. 2151.414(A) provides, in pertinent part:

"Upon the filing of a motion * * * for permanent custody of a child by a public children services agency * * * that has temporary custody of the child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. The notice also shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights, a full explanation of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent, and the name and telephone number of the court employee designated by the court pursuant to section 2151.314 of the Revised Code to arrange for the prompt appointment of counsel for indigent persons."

In support of her assignment of error, Kim Shaeffer argues that DHS's motion for permanent custody failed to meet the statutory requirements. However, requirements set forth in R.C. 2151.414(A) govern the notice which must be provided by the court, not the petitioner, in these cases. The notice given to appellant by the trial court contained all of the information required by the statute. Furthermore, despite the alleged ineffective notice, appellant elected to appear and participate with counsel. As appellant herself notes, there is authority supporting the proposition that such participation waives any objection to the inadequacies of the notice. See *Mobley v. Allaman* (1961), 89 Ohio Law Abs. 473, 184 N.E.2d 707. Finally, we note that appellant did not raise the issue of the adequacy of the notice at the trial level. Juv.R. 22(D) requires that defenses and objections based on defects in the complaint must be heard prior to the adjudicatory hearing. For all of these reasons, appellant Kim Shaeffer's first assignment of error is overruled.

In her second assignment of error, Kim Shaeffer asserts:

"The trial court's denial of a psychiatric expert to assist in the presentation of her defense infringed Kim Shaeffer's constitutional right to effective assistance of counsel and due process of law pursuant to the Fourteenth Amendment of the United States Constitution and the due course of law provision of Article I, Section 16 of the Ohio Constitution."

On April 13, 1992, Kim Shaeffer filed a pretrial motion requesting the appointment of a psychiatric expert to assist in her defense. The accompanying memorandum asserted that because of her indigency, Kim Shaeffer's right to due process included the right to court-appointed psychiatric assistance, as it was anticipated that Kim Shaeffer's mental health would be the basis of the DHS motion for permanent custody, or a determinative factor in the custody proceeding. On April 24, 1992, the trial court denied the motion.

As noted above, the permanent custody hearing was held on May 7 and 8, 1992. At the hearing, DHS argued that Kim Shaeffer was not adequately able to parent the children and focused upon her mental and emotional health problems. Dr. Antione Demosthene, a psychiatrist employed by Van Wert County Mental Health, was called by DHS to testify as to Kim Shaeffer's mental condition and the resulting effect upon her parenting ability. No psychiatric evidence was presented by the defense.

In its May 15, 1992 entry granting permanent custody to DHS, the trial court found that Kim Shaeffer had moved into housing suitable for herself and the children and that she had also received counseling and completed the parenting classes as required by the case plan. However, the trial court went on to find that "[t]he mother has been diagnosed as suffering from factitious disorder which is described as real illness created by a mental disorder." The court noted that Kim Shaeffer had been hospitalized numerous times due to physical problems stemming from her mental condition. The court concluded that Kim Shaeffer "has continual medical and mental problems," which "seem intertwined, with the mental conditions causing physical problems and visa [sic] versa." The court then determined that the children could not be returned to Kim Shaeffer within a reasonable time, and that it was in the best interests of the children that permanent custody be granted to DHS. Although the trial court's entry touched upon other issues, it is clear, upon an overall reading of the opinion, that Kim Shaeffer's mental health was the determinative factor in the case.

On appeal, Kim Shaeffer argues that the trial court erred in failing to appoint a psychiatric expert to assist in the case. In beginning our analysis of this assignment of error, we note that the First District Court of Appeals addressed this very issue in *In re Brown* (Nov. 26, 1986), Hamilton County App. No. C–850878, unreported, 1986 WL 13385. We find the *Brown* decision to be a thorough and well-reasoned treatment of the constitutional issues raised here, and have adopted much of the same analysis.

It is well established that parents have a fundamental liberty interest in the care, custody and management of their children. See *Santosky v. Kramer* (1982), 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599. Therefore, when the state initiates a permanent custody proceeding, the parents must be provided with

fundamentally fair procedures in accordance with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, *id.,* and the due course of law guarantee of Section 16, Article I of the Ohio Constitution.

▪ When determining whether the process granted by the state is constitutionally adequate, the United States Supreme Court has set forth three distinct factors which must be considered. *Mathews v. Eldridge* (1976), 424 U.S. 319, 334–335, 96 S.Ct. 893, 903–904, 47 L.Ed.2d 18, 33. First, the private interest affected by the official action; second, the risk of an erroneous deprivation of that private interest through the procedures utilized, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirements would involve. *Id.*

▪ When the state seeks to permanently terminate a parent-child relationship, two highly significant private interests are at stake. The first is the best interest of the child whose custody is at issue. The second is the parent's interest in the care, custody and management of the child. As noted, *supra,* this interest is regarded as a fundamental liberty interest. A parent's interest in the custody of his or her child is paramount to all others except for that of the child. *In re Perales* (1977), 52 Ohio St.2d 89, 6 O.O.3d 293, 369 N.E.2d 1047. The fundamental liberty interest of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of the child to the state. *Santosky, supra,* 455 U.S. at 753, 102 S.Ct. at 1394–1395, 71 L.Ed.2d at 606.

As to the second part of the *Mathews* test, the risk of an erroneous determination on the issue of a parent's mental health appears high when the parent does not have the resources to counter expert psychiatric evidence presented by the state. Psychiatry is not an exact science, and psychiatrists disagree widely and frequently on what constitutes mental illness, on the appropriate diagnosis to be attached to given behavior and symptoms, and on the cure and treatment. *Ake v. Oklahoma* (1985), 470 U.S. 68, 81, 105 S.Ct. 1087, 1095, 84 L.Ed.2d 53, 64–65. Thus, we believe that the assistance of a psychiatrist to conduct an examination, to testify, and to aid in preparing the cross-examination of the state's psychiatric expert witness would greatly reduce the risk of an erroneous determination on the mental health issue.

▪ Finally, we must consider the governmental interests involved in permanent custody proceedings. The state most definitely has a valid interest in the efficient and economic administration of these custody proceedings. The state, however, also shares the interest of the parent and the child in reaching a just

and accurate resolution of such matters. *Santosky, supra,* 455 U.S. at 766, 102 S.Ct. at 1401, 71 L.Ed.2d at 615.

Furthermore, upon considering the fiscal and administrative burdens which the additional procedural requirement proposed here would entail, we conclude that those burdens would not be excessive. The issue of a parent's mental or emotional stability does not arise in all permanent custody proceedings and, while no statistics are available to us, we suspect that a minor percentage of such cases are those where a parent's mental health is the predominant or sole determinative issue.

■ In sum, upon applying the *Mathews* analysis to the case before us, we find the private interests of Kim Shaeffer and her two minor children to be compelling. In cases such as this, where the parent's mental health is the principal issue, the risk of erroneous deprivation is a serious one and the merits of the proposed procedural safeguard are significant. Finally, we find the state's interest in economic and administrative efficiency to be comparatively weak and the prospective additional burden to be relatively slight. We therefore conclude that Kim Shaeffer's motion for a court-appointed psychiatric expert to assist in the preparation of her defense should have been granted.

■ Having reached this conclusion, we believe it important to clarify the breadth of our decision. We are not holding that due process requires the appointment of a psychiatric expert in every permanent custody proceeding where a parent's mental health is made an issue. However, in this case, because the indigent parent's mental or emotional health was clearly the predominant issue from the outset and ultimately became the determinative issue, and because the parent made a timely request for such assistance, we hold that the assistance of a court-appointed psychiatric expert was mandated by the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution. Accordingly, appellant Kim Shaeffer's second assignment of error is sustained.

In her third assignment of error, Kim Shaeffer asserts:

"The trial court's finding that permanent custody was in the best interests of Tina and Ashley Shaeffer was not based on clear and convincing evidence of the reasonable probability of the children's adoption."

R.C. 2151.414 provides, in relevant part:

"(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant

permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

"(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

"(2) The child is abandoned and the parents cannot be located;

"(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody."

As the children in this case were not orphaned or abandoned, the statute authorizes the granting of permanent custody to DHS if the trial court determined it to be in the best interest of the children and if the trial court found that the children could not be placed with their parents within a reasonable time or should not be placed with their parents.

When determining a child's best interest, R.C. 2151.414(D) requires that the court consider all relevant factors, including, but not limited to, the following:

"(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;

"(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;

"(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;

"(4) The custodial history of the child;

"(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."

Thus, pursuant to the statute, the probability of a child's adoption is just one factor, out of all which are relevant, that the trial court must consider. Under the statute, even in the absence of clear and convincing evidence of one of the enumerated factors, a trial court could still properly determine that granting permanent custody to a state agency is in a child's best interest. Furthermore, in the case *sub judice,* a DHS caseworker testified that the children are adoptable, even though they have special needs. The record contains no evidence indicating that placing the children with adoptive parents would pose a problem. For all of these reasons, Kim Shaeffer's third assignment of error is overruled.

In her fourth assignment of error, Kim Shaeffer asserts:

"The trial court erred in permitting the guardian ad litem to submit his written report after the permanent custody hearing in violation of the requirements of O.R.C. Section 2151.414(c) [*sic*]."

R.C. 2151.414(C) provides, in pertinent part:

" * * * A written report of the guardian ad litem of the child shall be submitted to the court prior to or at the time of the hearing held pursuant to division (A) of this section or section 2151.35 of the Revised Code, but shall not be submitted under oath."

In the case *sub judice,* the children's guardian *ad litem* submitted his report to the court just prior to the end of the hearing. Specifically, the guardian *ad litem* read the report into the record in open court, at the close of the evidence but prior to closing arguments. We find that this satisfies the statutory requirement that the report be submitted "at the time of the hearing." Kim Shaeffer's fourth assignment of error is therefore overruled.

In summary, as to the appeal by Kim Shaeffer, her first, third and fourth assignments of error are overruled and her second assignment of error is sustained.

Appellant Terry Shaeffer raises four assignments of error in his appeal, the first of which is as follows:

"Terry Shaeffer was denied equal protection under the XIV Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution."

In support of his assignment of error, Terry Shaeffer asserts that DHS "made the decision to set the goal to place the children back with Kim as opposed to placing the children with Terry." Appellant also argues that DHS favored and promoted Kim Shaeffer's visitation rights over those of appellant. Finally, appellant claims that "once it was decided that Kim was seriously mentally ill and would always be so, Van Wert Children's Services decided to go after permanent custody without ever having a goal set for the children to be with Terry and for Terry to have a chance to prove that he could take care of the children."

Upon a complete review of the record, we find that these claims are not supported by the evidence. The record indicates that DHS worked with both parents in an attempt to reunify the children with one of the parents. At trial, DHS caseworker Kim Wilson testified that Terry Shaeffer was a party to the case plan, developed by DHS and filed with the court as part of the reunification

effort. The caseworker testified that DHS placed an equal amount of emphasis on reunification with either parent. In sum, we find no evidence substantiating appellant's claim that the state arbitrarily favored the mother's rights over those of appellant so as to deny equal protection to appellant. Therefore, appellant's first assignment of error is overruled.

In his second assignment of error, Terry Shaeffer asserts:

"The trial court's finding at the adjudicatory hearing that Tina M. Shaeffer and Ashley D. Shaeffer were dependent children was in error."

An adjudication by a juvenile court that a child is "neglected" or "dependent," as defined in R.C. Chapter 2151, followed by a disposition awarding temporary custody to a public children services agency, pursuant to R.C. 2151.-353(A)(2), is a final appealable order. *In re Murray* (1990), 52 Ohio St.3d 155, 556 N.E.2d 1169. Time limits for filing appeals are governed by App.R. 4, which provides that "[a] party shall file the notice of appeal * * * within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure."

In the case *sub judice*, the adjudicatory hearing on the dependency issue was held on May 6, 1991, followed by the dispositional hearing on June 26, 1991. The instant appeal, however, was not filed until June 12, 1992, following the hearing and order on the motion for permanent custody. As such, any issues stemming from the proceedings in May and June 1991 have not been timely appealed and, accordingly, Terry Shaeffer's second assignment of error must be overruled.

In his third assignment of error, Terry Shaeffer asserts:

"The trial court errored [*sic*] when it did not grant Terry Shaeffer's motion for custody of Tina M. Shaeffer and Ashley D. Shaeffer."

As noted, *supra*, R.C. 2151.414(B) provides that permanent custody may be granted to the movant if the court determines that it is in the best interest of the child to do so, upon considering all relevant factors, and if the trial court finds that the child cannot be placed with the parents within a reasonable time or should not be placed with the parents. In making the latter determination, R.C. 2151.414(E) also requires that the court consider all relevant evidence. However, if there is clear and convincing evidence of one or more of eight enumerated criteria, R.C. 2151.414(E) requires the court to find that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents.

■  In making the determination in this case that the children could not be placed with Terry Shaeffer within a reasonable time or that the children should not be so placed, the trial court found two provisions of R.C. 2151.414(E) to be applicable, which then mandated a finding that the children should not be placed with Terry Shaeffer.

First, R.C. 2151.414(E)(1) provides:

"Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home.  * * *"

In this case, DHS requested that Terry Shaeffer schedule a home study, to determine the suitability of his home for the children.  Although several letters were sent in May 1991 by a local agency, Terry Shaeffer failed for six months to schedule the study.  In December 1991, the study was scheduled and completed upon Terry Shaeffer's request.  However, the home could not be approved at that time for several reasons.  The caseworker noted a lack of permanent bedding for all members of the household, the lack of liability insurance on motor vehicles, and structural problems with the house necessitating a fire inspection.

The fire inspection was then not requested by Terry Shaeffer until April 1992.  Upon completion of the fire inspection, seven safety violations were noted.  No attempt was made to correct the housing problems or fire safety violations until May 7, 1992, following the first day of the hearing on the permanent custody motion.  Furthermore, while Terry Shaeffer then testified that he had made certain changes and improvements, he had not contacted either DHS or the fire inspector to request further review of his home, as required.

Second, R.C. 2151.414(E)(4) provides:

"The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child."

The evidence in this case revealed that while Terry Shaeffer visited with the children several times in May 1991 and once in June 1991, he canceled a visit scheduled for June 14, 1991 and then failed to attend another visit until January 22, 1992, over seven months later.

In view of the evidence presented and the statutory criteria, we find that the trial court did not err in finding that granting permanent custody to DHS was in the children's best interest and finding that the children could not or should not be returned to Terry Shaeffer. Accordingly, Terry Shaeffer's third assignment of error is overruled.

In his fourth assignment of error, Terry Shaeffer asserts:

"The trial court's finding that permanent custody was in the best interests of Tina and Ashley Shaeffer was not based on clear and convincing evidence of the reasonable probability of the children's adoption."

This is the identical assertion as that made by Kim Shaeffer in her third assignment of error. We therefore overrule Terry Shaeffer's fourth assignment of error for the same reasons, cited *supra*, in overruling Kim Shaeffer's third assignment of error.

In summary, as Terry Shaeffer's four assignments of error are overruled, the judgment of the trial court as to Terry Shaeffer is affirmed. The judgment of the trial court as to Kim Shaeffer, however, is vacated. Her case is remanded for the appointment of a psychiatric expert on her behalf and for an additional hearing limited to the issue of her mental condition relative to the motion for permanent custody, to be followed by the issuance of new findings of fact, conclusions of law, and judgment entry based upon all of the evidence heretofore taken in the case and upon the additional evidence taken as to Kim Shaeffer's mental condition.

*Judgment affirmed in part,*
*vacated in part,*
*and cause remanded.*

EVANS, P.J., and THOMAS F. BRYANT, J., concur.