While I agree with the majority's careful analysis of the facts in this troubling case, I must dissent in the outcome for I believe the procedure utilized by the trial court overlooked a fundamental safeguard. There was no attorney appointed as the guardian ad litem for this child and, therefore, I cannot conclude that the child's best interests were properly presented to the trial court. It is impermissible, in my mind, to conduct a court hearing to adjudicate a fundamental right of a child, and to have that child unrepresented by counsel at that same hearing.
When the State of Ohio, by official governmental action, seeks to permanently terminate a parent-child relationship, two highly significant private interests are at stake, and they must be strictly protected. "The first is the best interest of the child whose custody is at issue. The second is the parent's interest in the care, custody and management of the child." In re Shaeffer Children (1993), 85 Ohio App.3d 683, 690. The United States Supreme Court has definitively found that the child's interest in remaining with his natural family is a mirror image of the parent's interest in maintaining the natural family unit. The right of the parents to raise their child has been defined as a "natural right," subject to the protections of due process. See Meyer v. Nebraska (1923),262 U.S. 390. Likewise, a child could be said to have a natural right to remain with his natural family, and that interest is fundamental and compelling.
Conversely, in all permanent custody cases, the family situation has devolved to such a state that the question is raised whether the child's interests would be better served by separating the child from his family. At that juncture, the child's interest in a reasonably healthy home environment is considered to be paramount and superior to other competing interests, including the fundamental and compelling interest of maintaining the natural family unit. In both cases, whether the child is ultimately to remain with the family or be separated, the private interests of the child which are affected by the official action are fundamental and compelling.
When determining whether the process granted by the state is constitutionally adequate, the United States Supreme Court has set forth three distinct factors which must be considered. Mathews v. Eldridge
(1976), 424 U.S. 319, 334-335. First, we must consider the nature of the private interest affected by the official action. Second, we must consider the risk of an erroneous deprivation of that private interest through the procedures utilized, and the probable value, if any, of additional or substitute procedural safeguards. Third, we must consider the government's interest, including the fiscal and administrative burdens that the additional or substitute procedural requirements would involve. Id.
Turning to the second prong of the Mathews analysis, we must consider the risk of an erroneous deprivation of a private interest through the procedures utilized, and the probable value, if any, of additional or substitute procedural safeguards. I recognize that the current procedures, including the appointment of a CASA volunteer to serve as a guardian ad litem, are entirely designed to protect the best interest of the subject child. I do not question the good faith of any of the principals involved. However, by design and nature, child custody proceedings are adversarial. There are competing fundamental interests involved. This case exemplifies the potential for the erroneous deprivation of those private interests. The parties reached opposite conclusions based upon the same set of facts. Both cannot be right. Thus, we must recognize that the possibility and potential for error exists, in spite of the extensive procedures.
I note that the trial court itself, in reaching its determination, is considering the best interest of the child. In that sense, an argument could be made that a child already has a form of substantial representation. However, in the context of evaluating whether the Due Process Clause guaranteed a child the right to counsel in a juvenile delinquency proceeding, the United States Supreme Court did a thorough evaluation of the history and development of juvenile law in this country to that point in time. See In re Gault (1967), 387 U.S. 1, at 12-31. Prior to that decision, the position of a child in juvenile delinquency proceeding was in some ways analogous to that of an unrepresented child in a current permanent custody proceeding. The rationale offered in favor of not providing juveniles with counsel was that the state was proceedingparens patriae, essentially, the equivalent of in loco parentis.
The historical argument of not providing the juvenile with counsel was that the courts were acting in the best interests of the child. Without repeating the entire analysis, the court concluded in Gault, supra,
that, although motivated by the highest impulses, the results of the system were unsatisfactory. Id., at 17-18. In a relevant summary of the cumulative results of proceedings wherein juveniles were unrepresented, the court stated: "[f]ailure to observe the fundamental requirements of due process has resulted in instances, which might have been avoided, of unfairness to individuals and inadequate or inaccurate findings of fact and unfortunate prescriptions of remedy. Due process of law is the primary and indispensable foundation of individual freedom. It is the basic and essential term in the social compact which defines the rights of the individual and delimits the powers which the state may exercise."Id., at 19-20. The United States Supreme Court concluded that juveniles did have a right to counsel in juvenile delinquency proceedings. It is, therefore, apparent that when a child is not represented by counsel in a permanent custody proceeding, there is a palpable risk of the erroneous deprivation of a child's fundamental and compelling interests. There is no substitute for a lawyer when a compelling and fundamental right is being altered by state action.
R.C. 2151.281(B)(1) states "[t]he court shall appoint a guardian ad litem to protect the interest of a child in any proceeding concerning an alleged abused or neglected child and in any proceeding held pursuant to section 2151.414 [2151.41.4] of the Revised Code. * * *." In relevant part, subsection (D) states "[t]he court shall require the guardian ad litem to faithfully discharge the guardian ad litem's duties * * *. "These duties are primarily defined in subsection (I), which states:
 "The guardian ad litem for an alleged or adjudicated abused, neglected, or dependent child shall perform whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by the public children services agency or private child placing agency that has temporary or permanent custody of the child, and shall file any motions and other court papers that are in the best interest of the child.
 "The guardian ad litem shall be given notice of all hearings, administrative reviews, and other proceedings in the same manner as notice is given to parties to the action." (Emphasis added.)
However, the statute, which requires a guardian ad litem to act as an attorney when necessary, does not require that all guardian ad litems be attorneys. Subsection (H) states:
 "If the guardian ad litem for an alleged or adjudicated, abused, neglected, or dependent child is an attorney admitted to the practice of law in this state, the guardian ad litem also may serve as counsel to the ward. If a person is serving as guardian ad litem and counsel for a child and either that person or the court finds that a conflict may exist between the person's roles as guardian ad litem and as counsel, the court shall relieve the person of duties as guardian ad litem and appoint someone else as guardian ad litem for the child. If the court appoints a person who is not an attorney admitted to the practice of law in this state to be guardian ad litem, the court also may appoint an attorney admitted to the practice of law in this state to serve as counsel for the guardian ad litem." (Emphasis added.)
The value of the added protection of requiring the appointment of counsel is the assurance that a child's constitutionally guaranteed rights to due process are protected. I applaud the work and efforts of the CASA programs in providing that voice. However, the statute itself clearly recognizes that a child requires a representative who is competent to file motions and court papers in the best interest of the child. In a municipal court action where neighbors are disputing issues as routine as money owed, the Supreme Court Rules for the Government of the Bar prohibit non-lawyers from the practice of law. Gov. Bar R. VII. How, therefore, can we countenance the practice of law by non-lawyers in proceedings where a child's very future is at stake? The necessity of requiring a child in a permanent custody proceeding be provided with counsel is evident, given the fundamental and compelling interest at stake.
It might be argued that requiring a child subject to a permanent custody proceeding be provided with counsel conflicts with the legislature's determination within R.C. 2151.281 that the child's representative in the proceeding need not necessarily be an attorney. When a child is the subject of any proceeding that affects a fundamental private interest of the child, the child must be provided with counsel. Within the context of R.C. 2151.281, a trial court has the option of assigning an attorney or a non-attorney as the guardian ad litem. If the trial court assigns a non-attorney as the guardian ad litem in a permanent custody case, as was done here, I would find that it is an abuse of discretion not to appoint an attorney to serve as counsel for the guardian ad litem. It is unreasonable, as a matter of law, for a child to be unrepresented in the most important court proceeding of their life.
In conclusion, I would find that in the present case, because the child was not represented in the proceeding by counsel, the process granted by the state was constitutionally inadequate. The State of Ohio and the parents were all well represented by counsel. The child's rights are entitled to no less.
 _________________________________ JUDGE WILLIAM M. O'NEILL