DECISION
Appellant, Jackey Andy, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting the motion of Franklin County Children Services ("FCCS") for permanent custody of appellant's minor son, Gregory Jones, a.k.a. Gregory Andy Jones, Jr. Because the trial court properly granted permanent custody of Gregory to FCCS, we affirm.
Gregory was born on January 19, 1999. On January 21, 1999, FCCS filed a complaint alleging that Gregory was a dependent child and requesting that the court make a disposition pursuant to R.C. 2151.353 including, but not limited to, an order of temporary custody or permanent commitment. At the time the complaint was filed, appellant did not have legal custody of her five older children. FCCS had been working with appellant since 1989, after her first child was born, helping her deal with issues concerning unstable housing and employment, mental health, drugs and alcohol, criminal activity, and lack of parenting skills.
While the complaint was pending, FCCS continued to work with appellant to address and work through the above listed concerns. The record indicates that the goal of both appellant and FCCS was reunification with her child. On September 20, 1999, following a five day trial, the magistrate found by clear and convincing evidence that Gregory was a dependent minor pursuant to R.C. 2151.04(C), that Gregory could not be reunified with either parent at this time despite reasonable efforts to prevent or eliminate the need for his removal from his parents, and ordered that temporary custody of Gregory be granted to FCCS. The court noted that appellant had obtained housing and employment, had completed three sets of parenting classes, and had completed both a drug and alcohol assessment and a psychological assessment. Although both the caseworker and the psychologist indicated that it was unlikely that appellant would ever be able to adequately parent Gregory, the magistrate determined that it was premature to consider permanent commitment because of appellant's current efforts to utilize case work and mental health resources.
Following the court's decision, a new case plan was prepared for both appellant and Gregory's father, who is not a party to this action. Specifically, as it relates to appellant, the case plan filed November 15, 1999, contains the same elements as had been present in prior case plans. Those elements included concerns over appellant's use of drugs and alcohol, domestic violence involving Gregory's father, lack of housing, lack of employment, visitation with Gregory and his siblings, and appellant's inability to demonstrate parenting skills. Unfortunately, the record reflects that appellant's recent efforts to utilize services being offered to her did not remain consistent. The record indicates that appellant did not remain employed, did not cooperate with her caseworkers, did not regularly attend counseling, and was not able to demonstrate that she had learned any parenting skills.
On March 15, 2000, another case plan was filed with the court. This case plan contained the same elements as the November 1999 case plan and indicated that the goal was still reunification and, if that was not possible, permanent placement for Gregory elsewhere.
On July 26, 2000, FCCS filed a motion seeking permanent custody of Gregory. Prior to trial, appellant filed motions to dismiss or, in the alternative, motions in liminie based upon the argument of res judicata. Appellant argued that on September 20, 1999, the magistrate specifically denied FCCS's request for permanent custody of Gregory after finding that appellant had made progress on the case plan. Appellant argued that this finding was res judicata as to FCCS's current complaint for permanent custody. The trial court did not accept appellant's argument that the prior entry constituted res judicata; however, the court did order that the evidence be confined to events occurring after the 1999 hearing.
Several caseworkers from FCCS who specifically worked with appellant testified at the trial. Douglas Pawlarczyk, Ph.D., the clinical psychologist who performed three assessments of appellant also testified. The testimony included the following evidence which was essentially uncontroverted. Appellant has a chronic history of mental illness, a borderline personality disorder which is pervasive and includes a deep-seeded pattern of instability in relationships, self-image and impulsivity. Appellant has difficulty focusing on the needs of other people and instead focuses on her own needs. Evidence of the effects of her mental illness on her ability to parent was provided by the caseworkers. They testified that, during visitations with Gregory and her other children, appellant continually had to be reminded to engage with the children and not to spend her time talking with staff. Appellant would call her caseworker indicating that she had an emergency when all she wanted to do was change the time of her appointment. During one visit, when Gregory was approximately two years old, he indicated to appellant that his diaper needed to be changed. Appellant ignored him and, ultimately, Gregory asked someone else to change his diaper. Testimony was provided that appellant's mental health issues could be addressed and perhaps remedied; however, weekly, regular visits with a counselor would be necessary. The record indicates that appellant continually refused to cooperate with counselors, provided false information to counselors, refused to engage with counselors, and refused to remain with any one counselor long enough to make any significant progress in addressing her mental health problems. This is absolutely uncontroverted in the record.
Another element of the case plan called for appellant to secure housing. The record indicates that appellant does currently have housing where she pays $97 per month in rent. However, as the caseworkers testified, having a home and maintaining that home go hand-in-hand. Appellant was referred to someone to help her learn to budget her money and pay her bills. However, the record indicates that appellant refused, time and again, to cooperate with this person. Appellant did not follow through with learning and applying budgeting skills.
Another element of the case plan involved appellant seeking employment. Although appellant had apparently secured some form of employment in 1999 when the court found that permanent custody was premature, appellant did not remain employed. Appellant testified that she was capable of working; however, she was not working now because she had too many other things going on, including counseling appointments and such. The caseworkers testified that, although appellant does receive approx-imately $500 per month in Social Security benefits, that sum would not be sufficient to provide for both appellant and a child.
Appellant's substance abuse involving alcohol and drugs constituted another element of the case plan. The record indicates that appellant was ordered to complete thirty-five drug screens. Appellant did complete nineteen screens; however, two of those were not considered valid because there was evidence that they might have been tampered with. The remaining seventeen screens were negative for drugs. However, the caseworkers testified that whenever a person refuses to submit to a drug screen, FCCS considers that the drug screen would have come back positive. Further, Gregory's father is a chronic substance abuser. Appellant acknowledged that fact, testified that it did concern her, and testified that she wanted Gregory's father to receive help for his drug addiction; however, appellant indicated, and the evidence demonstrates, that she was unwilling to end her relationship with him. The caseworkers testified that appellant has a history of using drugs more frequently when she is with Gregory's father. The record also indicates that appellant had told her caseworkers that she does turn to alcohol at times when she is under stress. The caseworkers indicated that this is evidence of appellant's lack of appropriate coping skills and is further evidence that she did not successfully complete this element of the case plan as well.
Domestic violence involving Gregory's father is also an element of the case plan. The record indicates that appellant has been the victim of domestic violence involving Gregory's father. Again, appellant refuses to terminate her relationship with Gregory's father. Furthermore, Gregory's father continues to refuse any services from FCCS, couples counseling with appellant, and Gregory's father was unsuccessful and the caseworkers consider this element of the case plan not to have been successfully completed either.
It is undisputed that appellant continues to visit with Gregory and it appears that appellant does want to be reunited with her son. However, the caseworkers testified that they have grave concerns regarding appellant's ability to provide a safe environment for Gregory. Aside from the previous examples given, two incidents stand out. When Gregory was approximately one year old, he fell off appellant's lap and hit his head. The caseworker testified that appellant made no effort to help Gregory. The caseworker tended to him, comforted him, and cared for the bruise on his head. Appellant's response was that if the carpeting had been thicker then his injuries would not have occurred. Further, testimony was provided that, on another occasion, appellant did not keep Gregory from running into the street. Instead, another person had to intervene to protect the child.
As part of the case plan, appellant needed to learn parenting skills. Appellant has completed at least three different sets of parenting classes. However, and it is unfortunate, the record does not indicate that appellant has been able to learn and use any of the information which was provided to her. The record does indicate that her low intelligence level and her mental health problems, combined together, make it more difficult for appellant to assimilate such information and then use it. As such, the caseworkers testified that appellant had not successfully completed this element of the case plan either.
At the conclusion of the trial, the court granted permanent custody of Gregory to FCCS for purposes of adoption. The court cited the following evidence: (1) Gregory has not bonded with his mother but has bonded with his foster parents and another sibling; (2) appellant's history of drug abuse, especially when she is with Gregory's father, and her failure to submit to all the required drug screens, is a concern; (3) although appellant has a good history of visitation with Gregory, she has not demonstrated the ability to bond with him or to keep him safe; (4) although appellant loves Gregory, the evidence indicates that she does not have the ability to provide for Gregory's basic needs; (5) although appellant has stable housing, she has not sought employment in part because it may interfere with her continuing ability to qualify with Social Security benefits and, as such, the return of Gregory to her custody would place him in a situation where she would not be able to care for him financially; (6) substantial clear and convincing evidence demonstrates that appellant's mental capacity would interfere with her ability to care for Gregory; (7) there is substantial clear and convincing evidence that appellant has been the victim of domestic abuse which will likely happen in the future; (8) the custodial history and need for permanent placement favors permanent custody since Gregory has been in the custody of the same foster parents his entire life and they desire to adopt him; and (9) the child's guardian ad litem has recommended that he believes Gregory would wish to remain with his foster parents and that placement with the foster family is in the best interest of Gregory. The court made the following findings:
 The evidence was weighted upon the basis of a clear-and-convincing standard.
 All four components of the "Best Interests" statute, ORC 2151.414(D)(1-4) , including (1) family interaction, (2) wishes of child, (3) custodial history, and (4) need for permanent placement, weigh in favor of permanent custody leading to adoption.
 Under ORC 2151.414(E-1) the parents have continuously and repeatedly failed to substantially remedy the conditions causing removal, despite the mother's efforts to do so.
 Under ORC 2151.414(E-1) the chemical dependency of the father and the mental/emotional disability of the mother prevents them from providing a permanent home for the child within a year.
 The total lack of commitment of the father under ORC 2151.414(E-4), and the likelihood of repeated incarceration of the father under ORC 2151.414(E-13) weights [sic] heavily in favor of terminating his parental rights.
 Finally, under ORC 2151.414(B)(3)(d), it is indisputable that the child has been in temporary custody for more than 12 months of a consecutive 22 month period.
 The Agency has made reasonable efforts to reunite the child to the family, but the inability of the mother to substantially remedy the conditions causing removal prevents return of the child to the home; such return would be contrary to the child's welfare. The child cannot be placed with either parent within a reasonable time and should not be placed with either parent. The circumstances giving rise to the original filing have not been sufficiently alleviated.
 For these reasons, the Agency's motion for permanent custody is granted.
Appellant filed a notice of appeal from the trial court's judgment and entry and asserts the following seven assignments of error:
FIRST ASSIGNMENT OF ERROR
 The trial court erred by granting permanent custody of the minor child to the appellee, where that finding was based upon the opinions of appellee's agents that appellant lacked sufficient parenting skills but where the objective evidence demonstrated that appellant had substantially complied with the requirements of the case plan.
 SECOND ASSIGNMENT OF ERROR The trial court erred by granting permanent custody to the appellee where that judgment was not supported by evidence meeting the clear and convincing standard, and therefore violated the appellant's right to due process under the Fourteenth Amendment to the United States Constitution.
 THIRD ASSIGNMENT OF ERROR The trial court erred by granting permanent custody of the minor child to the appellee when the appellee had failed to make a good faith effort to reunify the minor child with the appellant, in violation of appellant's right to due process.
 FOURTH ASSIGNMENT OF ERROR The trial court erred by granting permanent custody of the minor child to the appellee where the record conclusively demonstrates bad faith on the part of the appellee.
 FIFTH ASSIGNMENT OF ERROR The trial court erred by granting permanent custody of the minor child to the appellee based upon its conclusion that the parents had failed to remedy the conditions causing removal, where the court failed to record the conditions that the parents had allegedly failed to remedy, and where the evidence conclusively demonstrates that the appellant had remedied the conditions that caused the child's initial removal.
 SIXTH ASSIGNMENT OF ERROR The trial court violated the appellant's due process rights by failing to conclude that the appellant had remedied the conditions that caused the minor child's removal.
 SEVENTH ASSIGNMENT OF ERROR The trial court erred by overruling the appellant's motion to dismiss based upon claim and issue preclusion.
A children's services agency seeking permanent custody of an abused, neglected, or dependent child bears the burden of proving, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and, in the case of a child who is not abandoned or orphaned, that the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. R.C. 2151.414(B); In re William S. (1996), 75 Ohio St.3d 95. In addition, the agency must prove by clear and convincing evidence that reasonable efforts have been made to reunite the parent and child, or that such efforts would have been futile. R.C.2151.412 and 2151.419. Clear and convincing evidence requires proof that produces in the mind of the trier of facts a firm belief or conviction as to the facts which are sought to be established. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361.
R.C. 2151.413 provides that if a child has been in the temporary custody of one or more public children's services agencies for twelve or more months out of a consecutive twenty-two month period ending on or after March 18, 1999, the agency with custody shall file a motion requesting permanent custody of the child. The record is uncontroverted that Gregory had been in the temporary custody of FCCS and placed with a foster family for more than twelve months out of a consecutive twenty-two month period. As such, the record affirmatively establishes that the trial court correctly made this finding.
R.C. 2151.414 provides, in pertinent part:
 (B)(1) * * * [T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
* * *
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
* * *
 (D) In determining the best interest of a child * * *, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
Appellant's first, second, fifth, and sixth assignments of error are interrelated and will be addressed together. Appellant argues that the evidence does not support the trial court's findings. Specifically, appellant contends that the record does not demonstrate that she lacks sufficient parenting skills, especially since she completed several parenting classes. Further, appellant asserts that the record does not support a finding that she had failed to remedy the conditions causing Gregory to be removed from her. This court disagrees.
It is undisputed that appellant completed a certain number of parenting classes designed to equip her with skills necessary to care for her child. However, the record is also replete with evidence to support the caseworkers' professional opinions that appellant had not been able to assimilate that information and put it into practice. Appellant argues that the evidence shows that she did comply with the case plan by attending parenting classes, and that it was error for the court to accept the subjective opinions of the caseworkers. However, the trial court concluded that the caseworkers had presented their testimony in an objective, unbiased fashion and found their testimony to be credible. Further, the trial court did specifically note that appellant had made efforts to learn parenting skills by attending classes. Unfortunately, the record also indicates that appellant has been unable to assimilate that knowledge and then utilize it in caring for her child.
Appellant has cited no cases to support her argument that it is error for a trial court to make decisions concerning the credibility of witnesses in a hearing on a motion for permanent custody of a child. Instead, as with other cases, judging the credibility of witnesses is an inherent part of a trial court's responsibility.
Where the trial court's decision is supported by some competent and credible evidence, the reviewing court should affirm the trial court's decision. Jones v. Lucas Cty. Children Services Bd. (1988),46 Ohio App.3d 85. Despite appellant's best efforts to acquire parenting skills, the record reflects that she was not able to do so. Because the court's duty was to determine what was in the best interest of Gregory, the trial court did not err in determining that appellant had failed to satisfy this element of her case plan.
Concerning the other elements of the case plan, this court finds that there is sufficient competent credible evidence in the record to support the trial court's findings. While it is true that appellant has secured housing, the record also indicates that she has not cooperated with FCCS in learning budgeting skills and that she has been late in paying some of her bills. The court specifically found that, although she had secured housing, she still had not demonstrated that she could safely care for Gregory in her home. Because securing housing constitutes more than simply a roof over one's head, appellant's assertion that she has satisfied this element of the case plan and should be granted custody of her son is untenable. In fact, appellant concedes that she has not strictly complied with the requirements of her case plan while asserting that, by attending parenting classes and securing a place to live, she has substantially complied with the requirements of the case plan. Appellant ignores the fact that she has not made any progress in treating for her own mental health issues, has chronically failed to keep regular appointments with her caseworkers, has failed to submit to all drug testing, has failed to end her relationship with Gregory's father, and has failed to secure employment. The fact that appellant has a place to live, standing alone, does not constitute substantial compliance with her case plan.
Because there is sufficient competent credible evidence in the record supporting the court's finding, appellant's first, second, fifth and sixth assignments of error are not well-taken and are overruled.
Appellant's third and fourth assignments of error are interrelated and will be addressed together. Appellant asserts that FCCS failed to make a good-faith effort to reunify Gregory with her, in violation of her constitutional rights, and that FCCS specifically acted in bad faith. For the reasons that follow, we reject this argument.
It is undisputed that parents have a fundamental right to care for and have custody of their child. In re Shaeffer Children (1993),85 Ohio App.3d 683, citing Santosky v. Kramer (1982), 455 U.S. 745. This fundamental right is not lost based on a parent's temporary loss of custody. Id. However, there are times when it is in the best interest of a child to be permanently placed in the custody of someone other than the child's parent. Ohio has enacted statutes with this in mind. As indicated previously, the trial court concluded that there was clear and convincing evidence that permanent custody of Gregory should be granted to FCCS for purposes of adoption.
Appellant's contention that FCCS acted in bad faith and did not make reasonable efforts to reunify her with Gregory is not supported by the record. Instead, the record reflects just the opposite. FCCS has been actively involved with appellant and her children since 1989. Presently, appellant's oldest five children are in the legal custody of her sister. When Gregory was born, he was found to be dependent and temporary custody was granted to FCCS. In the time since Gregory's birth, appellant has had another child who has also been adjudged dependent and been placed in the temporary custody of FCCS.
The record indicates that, in the time since Gregory's birth, FCCS has utilized reasonable efforts to help reunify appellant with her child. FCCS has had caseworkers actively involved with appellant from the beginning. Appellant has been offered and referred for mental health treatment; however, appellant has refused to remain with one counselor long enough to make any progress. Further, appellant has refused to consider that medication might help with her mental health problems. FCCS has provided appellant with someone to help her learn to budget her money; however, appellant has refused to cooperate with that person. FCCS has provided weekly visitation for appellant with Gregory; however, the evidence indicates that, although appellant attended these visitations regularly, she has never demonstrated an ability to care for her son. As a result, the staff at FCCS never left appellant alone with Gregory. FCCS kept appellant informed of the elements of her case plan and consistently encouraged her to successfully complete those elements; however, the record indicates that appellant did not successfully comply with the case plan.
Part of appellant's argument is based on the fact that FCCS sought permanent custody of Gregory within six months after a magistrate determined that appellant had made some progress on her case plan and found that the issue of permanent custody was premature. However, once Gregory was in the temporary custody of FCCS for twelve out of twenty-two months, FCCS was mandated by law to seek permanent custody. The caseworkers testified that they would have been willing to hold off on filing a complaint for permanency if there were compelling reasons. Specifically, the record indicates that if the caseworkers had believed that appellant was within six months of successfully complying with the requirements of the case plan, FCCS would have waited. However, in that 1999 order finding that appellant had made some progress, the only two elements of the case plan listed were that she had secured housing and employment. Within a short period of time, appellant was no longer employed and testified that she was not going to seek employment. As stated previously, a person's ability to have a home does not equate with an ability to provide a safe environment for their child. The evidence cited by appellant does not negate the rest of the evidence in the record and does not support a finding of bad faith on the part of FCCS. Instead, this court finds that there is sufficient competent credible evidence in the record to support the trial court's finding that FCCS had made reasonable efforts to reunify appellant with her son Gregory. As such, appellant's third and fourth assignments of error are also not well-taken and are overruled.
In her seventh and final assignment of error, appellant contends that the trial court erred in overruling her motion to dismiss based upon claim of issue preclusion. For the reasons that follow, this court finds this assignment of error lacks merit.
First, appellant had originally moved the trial court that the action be dismissed or that, in the alternative, evidence be limited to issues which were not addressed by the prior 1999 decision and which occurred after that decision. Although the trial court overruled appellant's motion to dismiss, the trial court granted her motion to confine the evidence presented to matters after that 1999 hearing. As such, contrary to appellant's assertions on appeal, the trial court did grant her motion and did limit the presentation of evidence to those things which occurred after the 1999 hearing.
Further, appellant is incorrect to assert that the trial court decided in 1999 that permanent custody of Gregory should not be granted to FCCS. Instead, the specific language used by the trial court was that the issue of permanent custody was premature at that time. Contrary to appellant's assertions, the trial court did not ad-judicate the issue of Gregory's permanent custody at that time. As such, appellant's seventh assignment of error is likewise not well-taken and is overruled.
Upon review of the record before this court, we conclude that there is sufficient competent credible evidence in the record to support the trial court's finding that FCCS made reasonable efforts to reunify appellant with her son Gregory. Further, there is sufficient competent credible evidence in the record to establish that Gregory had been in the temporary custody of FCCS for a period of twelve out of twenty-two months, and that he could not be placed in the custody of appellant within a reasonable time. Further, there is sufficient competent credible evidence in the record to support the trial court's finding that appellant had not successfully complied with her case plan and it was in Gregory's best interest that he be placed in the permanent custody of FCCS so that his foster family could adopt him.
Based on the foregoing, appellant's seven assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of Gregory to Franklin County Children Services is affirmed. Appellant's September 21, 2001 motion for reconsideration of this court's September 19, 2001 entry is overruled.
Judgment affirmed.
BOWMAN and TYACK, JJ., concur.