OPINION
Appellant, Eva McCann appeals the decision of the Brown County Court of Common Pleas, Juvenile Division, granting legal custody of her daughter to the maternal grandmother and legal custody of her son to the purported father.
Appellant is the mother of two children, Aaron Callier,[1] born Oct. 19, 1992, and Abby McCann, born March 1, 1998. Appellant had custody of the two minor children in August 1999, when the Brown County Department of Human Services, nka Brown County Department of Jobs and Family Services ("the agency") filed complaints containing allegations of abuse, neglect, and dependency for both children.
The agency had previous contact with appellant and her children concerning appellant's drug and alcohol use. The agency alleged that appellant had been ordered to abstain from drug and alcohol-related activities. The agency became re-involved with appellant and her children upon allegations that appellant had been intoxicated for several days. An agency visit to appellant's home revealed a house in disarray with evidence of alcohol use in the home. Appellant refused to be tested for drugs and alcohol when requested by the agency when they visited the home. Police had indicated that they had previously responded to the home for domestic disturbances and had previously advised both appellant and appellant's male companion that they should not drive due to their intoxication.
The agency received temporary custody of the children, and placed the children with Connie Caudill, the maternal grandmother of the children.
The children were adjudicated dependent by stipulation of the mother and the remaining allegations were dismissed on September 2, 1999. Approximately one week after the adjudication, appellant was arrested and ultimately convicted of driving under the influence.
Appellant secured at least two continuances after adjudication. Another hearing was held on January 10, 2000, which was filed as a final appealable order and arguably constituted a dispositional hearing. Another review was held on August 30, 2000. Legal custody of Abby McCann was granted to the grandmother, Connie Caudill, and legal custody of Aaron Callier was granted to the purported father, David Callier, at the February 28, 2001 hearing.
Appellant appeals the decision of the juvenile court and raises the following assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT AWARDED LEGAL CUSTODY OF THE MINOR CHILDREN TO A RELATIVE.
 Appellant advances two arguments in support of her assignment of error. First, appellant argues that it was error to award legal custody of the two children to the custodians because neither custodian filed motions for legal custody.
R.C. 2151.353 addresses the disposition of abused, neglected or dependent children. R.C. 2151.353(A)(3) states that one of the orders of disposition available to a court is to "[a]ward legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]"
It is undisputed that neither custodian filed a motion for legal custody. However, we find that the juvenile court was not prohibited from making the award of legal custody to Caudill and Callier because appellant received adequate notice of the intention to award legal custody and fully participated in hearings prior to and including the award of custody. Further, it seems evident that the language of the statute also ensures that custody is not granted to someone who does not desire or is unable to accept custody. Neither circumstance is present herein.
A review of the record shows that the possibility of awarding legal custody of both children to Caudill was raised by the agency in January 2000. The agency recommended legal custody of Aaron to Callier and of Abby to Caudill in its written social summary and semi-annual review filed on July 24, 2000. The issue of legal custody to Caudill and Callier was discussed extensively at the August 30, 2000 hearing, in which appellant and her counsel were present and participated.
The entry for the August 30, 2000 hearing, which was file-stamped February 28, 2001, states that Caudill and Callier were requesting that they be considered as the legal custodians. The August hearing was six months before the hearing in which legal custody was ordered.
A number of courts, as we note, have encountered the issue of failure to file legal custody motions. Some of those cases have found error to consider custody when a motion was not filed. See In re Mayle (July 27, 2000), Cuyahoga App. Nos. 76739 and 77165.
However, the common concern evidenced in many of the cases, as in the instant case, is whether the aggrieved party received adequate notice that legal custody was a possibility and was given the opportunity to actively participate in the proceedings. See In re Fleming (July 22, 1993), Cuyahoga App. No. 63911 (reversed because no advance notice given that legal custody was being requested.); see In re Fruth (Dec. 2, 1999), Franklin App. Nos. 99-AP-18, 99-AP-19 (ruled that notice of intent to seek legal custody existed when agency requested legal custody to father and father had previously filed a motion but withdrew it during reunification efforts).
In addition, courts have also relied upon R.C. 2151.417(B) to provide direction for juvenile court custody dispositions. R.C. 2151.417(B) states that after a child has been adjudicated dependent and placed in an agency's custody, the court retains continuing jurisdiction over the child to amend the initial dispositional order and to review the child's custody arrangement or placement at any time, even on its own motion or upon the motion of an interested party, as long as the parties receive notice and an opportunity to be heard. In re Moorehead (1991),75 Ohio App.3d 711,716; see In re Barcelo (June 26, 1998), Geauga App. No. 97-G-2095 (father's failure to file legal custody motion prior to annual review hearing did not prohibit court from reconsidering custody arrangement on own motion particularly when it had provided notice to appellant of that possibility).[2]
Furthermore, despite the failure of the legal custodians to file written motions, appellant elected to appear and participate with counsel. There is also some authority for the proposition that such participation by appellant waives any objection to the inadequacies of the notice. See In re Schaeffer Children (1993), 85 Ohio App.3d 683,688. See, also, In re Barcelo. Appellant failed to question the propriety of the absence of written motions at the trial level, which thereby prohibited the alleged defect from being remedied below.
We are cognizant of the important interests at stake in this legal custody determination. However, the record reveals that appellant was provided with adequate notice of the possibility of legal custody, was afforded with opportunities to be heard, and did actively participate in the proceedings. The juvenile court did not err in proceeding to award legal custody.
The second argument advanced by appellant asserts that it was an abuse of discretion for the juvenile court to award legal custody to persons other than appellant because such award was not in the best interest of the children.
In making a custody decision, the best interest of the child is the standard to be applied. In re Brown (2001), 142 Ohio App.3d 193, 198. A juvenile court's custody decision will not be reversed absent an abuse of discretion. Id. In order to find an abuse of discretion, the juvenile court's decision must be unreasonable, arbitrary or unconscionable. Id. The discretion granted to the trial (juvenile) court in custody matters should be accorded the utmost respect, given the nature of the proceedings and impact of the court's determination on the lives of the parties concerned. Id.
First, we note that appellant fails to argue how the award of legal custody of Abby McCann to Caudill was not in Abby's best interest. We note that Abby has been in Caudill's care since the inception of this case. Appellant focuses, instead, on how the placement of Aaron with David Callier was not in Aaron's best interest.
Appellant asserts in her argument that the juvenile court did not adequately consider Callier's lack of legal status as the father, Callier's conviction for assault in the early 1990s, a charge of disorderly conduct in 1999, unsubstantiated accusations of domestic violence, concerns about the day-care provider selected by Callier, and his previous absence from Aaron's life.
Based upon the record before us, the juvenile court was informed about these concerns and considered them. The juvenile court was also provided with evidence that Callier had lived with Aaron after Aaron was born and that Callier is listed as the father of Aaron in a California record. The juvenile court was also informed that the day-care provider chosen by Callier was appellant's sister who had felony convictions a decade previous, but that Callier would change providers if needed.
The juvenile court also received evidence that Callier had established a relationship with Aaron, had weekend visits with him, and was attending counseling sessions with Aaron. Dr. A. Eugene Smiley, the psychologist working with Aaron, noted in his July 2000 report that Callier and Aaron were "well-bonded" and recommended legal custody of Aaron to Callier.
Appellant further argues that her progress in the case was ignored by the juvenile court. Appellant asserts that she had had "clean" drug and alcohol screens and completed substance abuse treatment.
The record shows that appellant did complete an intensive outpatient program as ordered by the court, but did not complete the aftercare phase of treatment and had not participated in any substance abuse services since the August 2000 hearing.
Further, appellant had changed residences numerous times during the case and had no contact with the agency for five months before the February 2001 hearing, except to request financial assistance for utilities.
Police reports were submitted to the court that showed that domestic disturbances were taking place between appellant and her male companion. Visitation by appellant with her children was reportedly not consistent because appellant and the maternal grandmother had an acrimonious relationship. The periods in which appellant was employed during the pendency of this case were also sporadic.
Appellant completed three psychological evaluations, which were presented to the court. All three indicated that appellant suffered from a borderline personality disorder. Dr. David Marcus conducted an evaluation in March of 1999, during the agency's previous involvement with appellant and before the instant dependency complaint was filed, which ultimately recommended that appellant's two children be returned to her care.
Dr. Marcus cautioned in his report that, based upon his evaluation of appellant and his interaction with Aaron, it was imperative that appellant comply with the recommendations of counselors and the agency because the "McCann children should not be subjected again to the types of unpredictable, ill-advised experiences they have had in the past due to their mother's use of drugs or alcohol."
The juvenile court also had the benefit of the report of the guardian ad litem ("GAL") appointed to represent the children. The GAL recommended that Abby be placed in the legal custody of Caudill and that Aaron be placed in the legal custody of Callier.
Our review of the record shows that the trial court did not abuse its discretion in granting legal custody of the children. There was competent, credible evidence supporting the trial court's determination that granting custody to Caudill and Callier was in the children's best interest. Appellant's assignment of error is overruled.
Judgment affirmed.
WALSH, P.J., and YOUNG, J., concur.
[1] The name Callier is also spelled "Caillier" throughout the record in this case. We will use the spelling provided to this court on appellant's notice of appeal.
[2] This court's decision in the case of In re Motter (June 15, 1998), Butler App. No. CA96-12-269, held that a parent need not file a motion for legal custody pursuant to R.C. 2151.353(A)(3). The Motter court emphasized that it was dealing with a parent as opposed to a nonparent seeking custody and also dealt with the question of whether the aggrieved party had adequate notice that the father was seeking legal custody instead of temporary custody. We do not find the Motter decision in conflict with the instant case.