JOURNAL ENTRY and OPINION
{¶ 1} Bruce Harlston appeals from a December 20, 2001 judgment of the juvenile court which terminated his parental rights and granted permanent custody of his two children to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). On appeal, he claims that the court's decision is not supported by the evidence and that the court lacked jurisdiction to enter an order concerning permanent custody as it failed to provide notice of the custody hearing to the mother of his children. After a careful review of the record and applicable law, we have concluded that these assignments of error are not well taken and therefore we affirm the judgment of the court.
 {¶ 2} The record reveals that on October 27, 1998, the CCDCFS removed Bruce Harlston (d.o.b. 6-12-93) and Nautica Frazier (d.o.b. 8-19-94) from their maternal grandmother who could no longer provide care for them. Their natural mother had left them with her because appellant had been incarcerated. On May 18, 1999, the court adjudicated the children to be neglected and granted temporary custody to CCDCFS, although the court knew at the time that appellant attempted to establish paternity. The court also ordered a case plan for Harlston which required him to establish stable housing, obtain a drug assessment, attend parenting classes, and secure stable employment. Almost a year later, on March 6, 2000, CCDCFS filed a motion seeking permanent custody of the children, thereby terminating all parental rights.
 {¶ 3} Although Harlston had completed parenting classes while incarcerated, he tested positive for drug use in December of 1999, in December of 2000, and again in February of 2001. He also admitted that he did not attend the required drug aftercare program because he felt that he did not need it.
 {¶ 4} The court conducted a dispositional hearing on the request for permanent custody on March 21, 2001, where Harlston stated that he had a job and that he continued to seek permanent housing. He explained that he did not maintain regular visits with his children because due to a drug arrest, he lost his automobile and he did not know the bus schedule. At the conclusion of the hearing the court gave him an additional six months to find a permanent residence for the family. The court reset the hearing for December 12, 2001.
 {¶ 5} At the December 12, 2001 hearing, the court learned that Harlston had not located independent housing, did not have a job, and had failed to enroll in aftercare treatment. He informed the court that he lived with a woman and her three children. He testified that he could not work due to neck and back soft tissue injuries sustained in an automobile accident in May of 2001, and insisted he did not need drug aftercare.
 {¶ 6} At the conclusion of the hearing the court, in a journal entry dated December 20, 2001, declared: "* * * by clear and convincing evidence that it is in the best interest of the children to grant Permanent Custody to Cuyahoga County Department of Children and Family Services." The court further found:
 {¶ 7} "1) That the children have been in the temporary custody of CCDCFS under an order of disposition under section 2151.353 of the Revised Code for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 {¶ 8} "2) That the children are not abandoned or orphaned and cannot or should not be placed with either parent with a reasonable period of time as follows:
 {¶ 9} "a) Since the children were removed from the parents, and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children's home. The parents have not followed through with recommended services in the case plan;
 {¶ 10} "b) Mother is in agreement with Permanent Custody to Cuyahoga County Department of Children and Family Services.
 {¶ 11} "c) Parents have failed to maintain stable, appropriate housing as set forth in the case plan.
 {¶ 12} "d) Parents have demonstrated an unwillingness to provide an adequate permanent home for the children.
 {¶ 13} "e) The children have been in the custody of CCDCFS since October 27, 1998 and would benefit from a legally secure, permanent placement.
 {¶ 14} "f) The mother has visited with the children only once since January 5, 2000 and has not maintained regular contact with them since they have been in agency custody.
 {¶ 15} "g) The Court finds the reasonable efforts were made by Cuyahoga County Department of Children and Family Services.
 {¶ 16} "h) Mother is in agreement with Permanent Custody to Cuyahoga County Department of Children and Family Services.
 {¶ 17} "I) Father has made no stable home or permanent employment in which to care for the children."
 {¶ 18} Harlston now appeals from that order and presents two assignments for our review. The first states:
 {¶ 19} "The trial court erred by granting permanent custody to CCDCFS when the decision was not supported by the evidence."
 {¶ 20} Harlston argues that the court's order is not supported by clear and convincing evidence. The guardian ad litem asserts the order is supported by the evidence and is in the best interest of the children.
 {¶ 21} In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate clear and convincing evidence that (1) the grant of permanent custody to the agency is in the best interest of the child, and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1).
 {¶ 22} We recognize that in custody proceedings the court enjoys wide latitude and an appellate court will reverse a ruling only where it concludes that the court abused its discretion. We recently articulated the standard of review employed by an appellate court in considering a decision granting permanent custody to a child services agency:
 {¶ 23} "While App.R. 12 grants an appellate court the power to reverse trial court judgments and enter those judgments that the court should have rendered, it is inappropriate in most cases for a court of appeals to independently weigh evidence and grant a change of custody.Miller v. Miller (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding (i.e., observing their demeanor, gestures and voice inflections and using these observations in weighing the credibility of the proffered testimony) cannot be conveyed to a reviewing court by a printed record. Id., citing Trickey v. Trickey
(1952), 158 Ohio St. 9, 13, 106 N.E.2d 772.
 {¶ 24} In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80. Accordingly, the trial court's determination in a custody proceeding is only subject to reversal upon a showing of an abuse of discretion.Dailey v. Dailey (1945), 146 Ohio St. 93; Trickey, supra. Hence, this reviewing court will not overturn a permanent custody order unless the trial court has acted in a manner that is arbitrary, unreasonable or capricious. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219." Inre Benavides (May 3, 2001), Cuyahoga App. No. 78204.
 {¶ 25} The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. State v. Akwal (1996), 76 Ohio St.3d 324, 331. And, unless that discretion is abused, a reviewing court is not warranted in disturbing its judgment. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, syllabus; In re Pieper Children (1993), 85 Ohio App.3d 318, 330.
 {¶ 26} Regarding the disposition of an abused, neglected or dependent child, R.C. 2151.353 provides the following:
 {¶ 27} "(A) If a child is adjudicated * * *, neglected, * * *, the court may
 {¶ 28} "* * *
 {¶ 29} "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414
of the Revised Code that the permanent commitment is in the best interest of the child. * * *"
 {¶ 30} R.C. 2151.414(B) sets forth a two-part test that must be met before a trial court may grant a motion for permanent custody of a child filed by an agency. The first prong of the test requires a determination of the best interest of the child, pursuant to R.C.2151.414(D). The second prong requires a finding from among four options:
 {¶ 31} "(a) * * * The child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 32} "(b) The child is abandoned.
 {¶ 33} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 34} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999." R.C. 2151.414(B)(1).
 {¶ 35} Here, the court determined that the children had been in the temporary custody for twelve or more months, and that the children could not be placed with either parent within a reasonable period of time. Harlston does not challenge that the children have been in the custody of CCDCFS for at least twelve months. In fact, the record establishes that the children have been in the temporary custody of CCDCFS for over three years. Therefore, the first prong of the test is met.
 {¶ 36} The second prong of our review concerns the best interests of the children. The best interests of a child are determined by reference to the factors set forth in R.C. 2151.414(D):
 {¶ 37} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 38} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 39} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 40} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 41} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 42} In reviewing Harlson's position, we consider the evidence presented at the hearing on each of the relevant factors set forth in R.C. 2151.414(D). Regarding the first, evidence before the court demonstrated that neither the father nor the mother had much interaction or relationship with the children during the past three years. Harlston testified that he did not maintain regular visits because he did not have an automobile and did not know the bus schedule. The mother has moved to Georgia and agreed with the placement of the children.
 {¶ 43} Moreover, it is undisputed that the children have bonded with their foster parents.
 {¶ 44} The second factor regarding the wishes of the child is inapplicable here because the children are too young to express an opinion on their wishes.
 {¶ 45} The third factor concerns custodial history, which, in this case, shows that at the time of trial, the children had been in foster care for over three years. During that time, Harlston rarely visited, never completed the required case plan, relapsed and/or continued his drug use — all indicative of his lack of commitment to his children. On the other hand, the evidence establishes a bond with their foster family.
 {¶ 46} Regarding the fourth factor, the evidence shows that appellant has been unable to maintain stable housing, employment, or deal effectively with his drug problem. At the final hearing, he admitted that he has been living with a friend and sleeping on a couch.
 {¶ 47} Concerning the fifth factor, the court must determine by clear and convincing evidence, whether one or more of the conditions enumerated in R.C. 2151.414(E) exist with respect to the child's parent.In re William S. (1996), 75 Ohio St.3d 95. Here, the evidence shows the existence of several conditions under R.C. 2151.414(E).
 {¶ 48} Pertinent factors for the instant case include the following: (1) Harlston failed to follow and complete his proposed case plan which ordered him to participate in substance abuse treatment and stay drug free, submit to random drug tests, complete parenting classes, maintain stable employment and; (2) Harlston demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so; (3) he had been repeatedly incarcerated, which then prevented the parent from providing care for the children; and (4) he is unable to provide food, clothing, shelter, and other basic necessities for the children.
 {¶ 49} Evidence in the record indicates Harlston did not substantially complete his case plan. Noncompliance with a parent's case plan is a ground for termination of parental rights. In re Brofford
(1992), 83 Ohio App.3d 869. On the record before us, clear and convincing evidence indicates little likelihood of Harlston providing the care these children require.
 {¶ 50} Clear and convincing evidence exists to support the court's determination that it is in the children's best interest to grant permanent custody to the CCDCFS.
 {¶ 51} Finally, Harlston argues that the children should be placed in a Planned Permanent Living Arrangement ("PPLA") pursuant to R.C.2151.415(A)(5). We summarily reject this argument as there is nothing in the record to suggest that Harlston sought a planned permanent living arrangement as an alternative to permanent custody. See In re P.R., Cuyahoga App. No. 79609, 2002-Ohio-2029.
 {¶ 52} In now requesting a PPLA, Harlston focuses his argument on whether the evidence established that the children retained a significant and positive relationship with him. However, even if the evidence does establish that Harlston maintained such a relationship with his children, none of the other requirements for a PPLA placement were satisfied. First, there is nothing in the record to suggest that the CCDCFS ever requested such a placement. There was also no evidence presented, much less clear and convincing, to establish any of the other statutory requirements: that a PPLA placement would be in the children's best interests; that Harlston is unable to care for his children due to his psychological problems, as opposed to his problem with substance abuse; or that adoption is not in the children's best interests. Therefore, the trial court lacked authority to make such a placement. See2151.353(A)(5). Consequently, the court did not err or abuse its discretion by failing to place the children in a PPLA. Moreover, as referenced above, the evidence supports the court's decision to grant the permanent custody to CCDCFS and serves as evidence that a planned permanent living arrangement would not be in their best interests. Accordingly, we have concluded that his assignment of error is without merit and it is overruled.
 {¶ 53} The second assignment of error states:
 {¶ 54} "The trial court lacked jurisdiction to make an order of permanent custody as it did not provide reasonable notice to all parties of the permanent custody hearing."
 {¶ 55} Harlston submits the court lacked jurisdiction to consider entering an order of permanent custody because the court did not provide notice to the mother of the children in that the service by publication used to notify her was not proper and no attempt was made to notify her of the later proceedings. The guardian ad litem argues the court properly served the mother by publication and by residence service.
 {¶ 56} The failure to raise the adequacy of the notice in the trial court level constitutes a waiver of this objection. Juv.R. 22(D); see also In re Shaeffer Children (1993), 85 Ohio App.3d 683. As Harlston made no objection to service at the hearing, this objection has been waived.
 {¶ 57} Even if he could demonstrate that he had timely objected to the lack of service on the mother, we are not persuaded that her absence prejudiced his rights. As already noted, service upon both parents is necessary in permanent custody proceedings because neither parent's rights can be terminated unless the judge finds that the child cannot be placed with either parent. However, here not only is the record devoid of any evidence that the mother could be granted custody, but as the trial court stated in its journal entry, the "mother is in agreement with Permanent Custody with Cuyahoga County Department of Children and Family Services." The second assignment of error is overruled.
 {¶ 58} It is not surprising to me that the author of the concurring opinion is stupefied by my support of a rule to exclude judges' names from opinions — such is irrelevant to our review. Relevant, however, are parties and case designations. If secrecy were a concern, the rules allow for John Doe or Jane Roe nomenclature. That does not exist in this case.
 {¶ 59} The irony here is that the hypocrisy to which Judge Kilbane refers is a two-edged sword cutting equally against her position to name judges but not parties!
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court Division of the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., CONCURS IN JUDGMENT ONLY, ANNE L. KILBANE, J., CONCURS IN JUDGMENT ONLY WITH SEPARATE CONCURRING OPINION.