JOURNAL ENTRY and OPINION.
{¶ 1} Sherry N. ("Sherry") appeals from a decision of the juvenile court awarding permanent custody of her children to Cuyahoga County Department of Children and Family Services ("CCDCFS"). On appeal, she assigns the following errors for our review:
 {¶ 2} "I. The Cuyahoga County Department of Children and Family Services failed to show by clear and convincing evidence that permanent custody is in the minor children's best interests."
 {¶ 3} "II. The Cuyahoga County Department of Children and Family services failed to show by clear and convincing evidence that appellant had not remedied the conditions which caused the removal of the children from the home."
 {¶ 4} "III. The Cuyahoga County Department of Children and Family services failed to satisfy its burden to prove that it made reasonable efforts to reunify appellant and the children."
 {¶ 5} "IV. The Juvenile Court abused its discretion when it admitted prejudicial hearsay into evidence upon which it relied in its decision to terminate appellant's parental rights."
 {¶ 6} Having reviewed the record and pertinent law, we affirm the decision of the juvenile court. The apposite facts follow.
 {¶ 7} On March 4, 1999, CCDCFS filed a complaint requesting the temporary custody of Sherry's children, C. N., A. W., and M. W. The complaint alleged the agency was involved with the children since 1993 because of neglect by Sherry, due to a history of abuse of crack cocaine. The court subsequently placed these children in the emergency custody of CCDCFS. On May 23, 1999, the court journalized an order adjudicating the children to be neglected and committing the children to the temporary custody of CCDCFS. The court thereafter extended temporary custody twice.
 {¶ 8} On March 2, 2001, CCDCFS filed a motion to modify temporary custody to permanent custody. A trial was held on March 26, 2002 and continued on June 26, 2002.
 {¶ 9} At trial held on March 26, 2002, Irvin Thomas, a supervisor assigned to this case, testified that CCDCFS developed a case plan for Sherry which dealt with her substance abuse, basic needs, and parenting. In March 1999, the agency referred her for a drug assessment, and in May 1999, it referred her to Recovery Resources drug treatment program. He also testified that the agency subsequently learned that she was arrested in July 2000 for possession of crack cocaine and was sentenced in January 2001 to an eleven-month term in Ohio Reformatory for Women. His testimony indicated that she was granted an early release in April 2001, conditioned on receiving inpatient treatment at a drug program. However, she left the treatment facility without authorization. CCDCFS then referred her to Fresh Start Substance Abuse Program; she completed that program and was released in December 2001. However, in that month, she tested positive for crack cocaine in violation of her parole terms and was returned to Ohio Reformatory for Women to serve out her term, which ended in May 2002.
 {¶ 10} Thomas further testified since March 1999, the children had been placed with four different relatives, all of whom asked for their removal, and the children have been in foster care since January 2001.
 {¶ 11} Jerrod Laverde, a social worker from CCDCFS, testified he was responsible for screening Sherry for drug use monthly and she showed up for the test only once, in December 27, 2001, testing positive for crack cocaine on that occasion.
 {¶ 12} When the trial resumed on June 26, 2002, Sherry testified she was just released from prison two weeks ago, and was residing with her fiancé in a two bedroom apartment. She stated she had requested section 8 housing but CCDCFS could not provide her with referrals. She admitted to have tested positive for drugs in May 2001 and in December 2001.
 {¶ 13} Following trial, the court journalized an order awarding permanent custody of Sherry's children to CCDCFS. She now appeals from that order.
 {¶ 14} When reviewing a juvenile court's determination of a disposition, we accord the court's discretion "the utmost respect,"[1]
taking into account that "the knowledge gained through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record."[2] "A court exercising Juvenile Court jurisdiction is invested with very broad discretion, and, unless that power is abused, a reviewing court is not warranted in disturbing its judgment."[3]
 {¶ 15} R.C. 2151.414 sets forth a two-prong analysis to be applied by the juvenile court for a determination of whether permanent custody should be granted to an agency. The statute requires the court to find, by clear and convincing evidence,(1) the existence of one of the factors enumerated in (B)(1), and (2) an award of permanent custody to be in the best interest of the child. It states:
 {¶ 16} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 17} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 18} "(b) The child is abandoned.
 {¶ 19} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 20} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 21} Moreover, to make a determination in accordance with (B)(1)(d) of whether a child can be placed with either parent within a reasonable period of time or should not be placed with the parents, R.C.2151.414(E) requires that the court consider all relevant evidence, including whether "the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home."
 {¶ 22} Our comparison of R.C. 2151.414(B) as amended by House Bill No. 484 and its prior version[4] indicates that when a child is in the temporary custody of a children services agency for 12 months of a consecutive 22-month period, the court no longer needs to determine whether the child can be placed with either parent within a reasonable time. When this factor exists, therefore, under the current version of the statute, it obviates a determination required by R.C. 2151.414(E) of whether the parent has remedied the conditions which caused the removal of the children.[5]
 {¶ 23} Here, the court found the children to have been in the temporary custody of CCDCFS for 12 or more months of a consecutive 22-month period, the factor set forth in R.C. 2151.414(B)(1)(d). Our review indicates the record supports this finding: the children was placed into the agency's temporary custody since March 23, 1999, and they remained in its custody until the time of trial, which was held on March 4, 2001 and continued on June 26, 2002. The existence of this factor thus renders unnecessary an analysis of whether the children can be placed with their parents within a reasonable time or whether the parents have failed to remedy the conditions causing the children's removal. Accordingly, we overrule Sherry's second claimed error.
 {¶ 24} Because of the existence of the (B)(1)(d) factor, the only issue to be resolved in the instant permanent custody matter is whether its award to the CCDCFS is in the best interest of the children.
 {¶ 25} To determine the best interest of a child, R.C. 2151.414(D) instructs the court to consider all relevant factors, including, but not limited to, the following:
 {¶ 26} "(1)The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 27} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 28} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 29} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 30} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply."
 {¶ 31} In connection with R.C. 2151.414(D), our court has stated that only one of these enumerated factors needs to be resolved in favor of an award of permanent custody.[6]
 {¶ 32} Here, our review of the record indicates that in its best interest determination, the court emphasized the custodial history of the children, which showed an extended period of continuous placement of the children outside of the home. The court also commented at length on the children's need for a legally secure permanent placement due to Sherry's history of substance abuse, rejections of drug treatment, and repeated incarceration.
 {¶ 33} Thus, the record shows the court resolved two of the factors in favor of granting permanent custody.
 {¶ 34} The record in addition contains statements from the children's guardian ad litem indicating their mother did not visit them due to her incarceration and their father's relationship with them was strained due to his inability to manage their care. The guardian ad litem also stated despite the children's awareness of their parents, "they are not ready to be reunited again due to the prior problems where mom relapsed and was jailed and the father has lost contact with the Agency." The guardian ad litem, stating additionally that "the children are happy with their present placement and enjoy their foster parents," found it in the best interest of the children to place them in a permanent stable environment.
 {¶ 35} The record reflects competent and credible evidence which supports the court's determination that permanent custody is in the best interest of the children. As we must accord the court the utmost deference in a permanent custody analysis, we conclude the trial court did not abuse its discretion in this determination. Consequently, we overrule Sherry's first assigned error.
 {¶ 36} In Sherry's third assignment of error, she claims CCDCFS failed to demonstrate reasonable efforts to reunify her and her children, citing the authority of R.C. 2151.419.
 {¶ 37} R.C. 2151.419 requires the court to determine whether the public children services agency that filed the complaint in the case has made reasonable efforts to make it possible for the child to return safely home. However, that statute applies only to hearings held pursuant R.C. 2151.28, division (E) of R.C. 2151.31, R.C. 2151.314, R.C. 2151.33
or R.C. 2151.353. The motion for permanent custody in this case was filed pursuant to R.C. 2151.413. Therefore, the reasonable efforts demonstration is not required in the instant permanent custody analysis.[7]
 {¶ 38} Even if this demonstration were necessary, our review of the record indicates that CCDCFS made efforts, though ultimately unsuccessful, to assist Sherry by instituting a case plan which addressed her substance abuse, basic needs, and parenting. It referred her in March 1999 for a drug assessment and subsequently referred her to Recovery Resources drug treatment program. It again referred her to drug treatment at Community Assessment and Fresh Start Substance Abuse Program in August 2001. CCDCFS also referred her to housing and parenting programs, although it could not provide a section 8 housing referral. Furthermore, the record reflects the agency made attempts at arranging visitation between her and the children, but were unsuccessful because of her incarceration. Sherry complains the agency failed to help her with her housing needs; however, R.C. 2151.414(C) specifically provides that the court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of a case plan.[8] CCDCFS' efforts to assist Sherry have not been extraordinary, but given the circumstances in this case, we consider these efforts reasonable.
 {¶ 39} Accordingly, we overrule Sherry's third assigned error.
 {¶ 40} In her fourth assignment of error, Sherry claims the court relied on inadmissible hearsay in its permanent custody determination. Specifically, she complains that the social worker in this case made numerous hearsay statements regarding her failure to visit with her children. However, she fails to identify in the record[9] any specific statements she challenges as inadmissible hearsay, and, our review of the relevant portion of the trial transcript reveals none. Therefore, we summarily overrule this assigned error.
Judgment affirmed.
MICHAEL J. CORRIGAN, P.J., and ANNE L. KILBANE, J., CONCUR.
[1] See In re Campbell (October 12, 2000), Cuyahoga App. Nos. 77552 and 77603, citing Reynolds v. Goll (1996), 75 Ohio St.3d 121, 124; see, also, In re Awkal (1994), 95 Ohio App.3d 309, 316.
[2] Campbell, citing Goll.
[3] In re Pieper Children (1993), 85 Ohio App.3d 318, 330.
[4] The previous version of R.C. 2151.414(B) stated:
"(1)The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;
"(2) The child is abandoned and the parents cannot be located;
"(3) The child is orphaned and there are no relatives of the child who are able to take permanent custody."
[5] See, e.g., In re Evans, Allen App. No. 1-01-75, 2001-Ohio-2302 (the statute places a new significance on the amount of time a child has been in the custody of a protective agency by making it a factor for determining the standard for granting a motion for permanent custody; under the current version of 2151.414(B)(1), once a child has been in the custody of a children's protective agency for twelve or more consecutive months the court can grant permanent custody to the agency upon a finding that it would be in the best interests of the child and can forgo an analysis into whether child can be placed with either parent within a reasonable amount of time); In re Miqueal, Lucas App. No. L-02-1020, 2002-Ohio-3417 (it appears that by enacting R.C. 2151.414(B)(1)(d), the legislature intends that the mere amount of time in which a child is in the continuous care of a public or private children services agency is sufficient to terminate a parent's right to raise her child and to award permanent custody to the requesting agency).
[6] In re Moore (August 31, 2000), Cuyahoga App. No. 76942, citing Inre Shaeffer Children (1993), 85 Ohio App.3d 683; see, also, In re M.Z., Cuyahoga App. No. 80799, 2002-Ohio-6634; In Re Legg, Cuyahoga App. Nos. 80542 and 80543, 2002-Ohio-4582.
[7] See, also, In re Llewellyn, Fairfield App. Nos. 02CA10, 02CA11, 02CA12, 2003-Ohio-1102.
[8] See, also, In re Cook, Seneca App. 13-02-27, 2003-Ohio-865; In reMalone (May 11, 1994), Scioto App. No. 93CA2165; In re Spurlock Children
(January 27, 1992), Butler App. Nos. CA90-01-013, CA90-01-014.
[9] App.R. 16(2) states "the court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based * * *."