OPINION
{¶ 1} Montgomery County Children Services Board (MCCS) is appealing the decision of the Juvenile Court of Montgomery County not to grant it permanent custody of child Curtis Graves. MCCS was granted permanent custody of Curtis' sibling young sister, Izora. Appellee Curtis, through counsel, filed a brief supporting the trial court's decision, and Izora and Curtis' mother filed a brief through counsel supporting appellee Curtis' brief, but also arguing that she should at some point be able to care for and have custody of Isadora and, therefore, contesting the granting of permanent custody of that child to MCCS. The facts of this case and the reasoning of the trial court are set forth in its decision and opinion, reproduced below in full:
 {¶ 2} "This matter is before the Court pursuant to objections of: Margaret Tackett, mother of said child(ren), by and through counsel herein filed March 11, 2003; Christopher Graves, father of said child(ren), by and through counsel herein filed March 4, 2003; and Montgomery County Children Services (hereinafter MCCS) herein filed April 17, 2003. All parties object to the Magistrate's Decision and Judge's Order of Planned Permanent Living Arrangement (hereinafter PPLA) for Curtis and Permanent Custody (PC) for Izora herein filed December 6, 2002. On December 23, 2003 this Court granted Ms. Tackett an extension of time to file supplemental objections, and furthermore granted both Mr. Graves and MCCS additional time to supplement their objections. Thus, the above objections are timely filed with this Court pursuant to Juv.R. 40(E)(3)(a).
 {¶ 3} "On June 13, 2000, MCCS filed a Complaint for Neglect and Dependency alleging that Ms. Tackett's home was in a `deplorable condition' and that there was a gas leak. See Neglect and Dependency Complaint, June 13, 2000, JC No. 2000-3760-3761. Both children were then placed in Foster Care where they have since remained. MCCS filed a motion for permanent custody of said child(ren) on March 5, 2001. On March 21, 2002, Mr. Graves filed a motion for legal custody of said child(ren). As a result of numerous continuances, MCCS's motion for permanent custody and Mr. Graves' motion for legal custody of said child(ren) were heard in two segments, one beginning on April 22, 2002, and the other on July 26, 2002.
 {¶ 4} "In her December 6, 2002 Decision, Magistrate Harshbarger granted PPLA for Curtis, and in a separate Decision granted PC of Izora to MCCS. Thereafter, on December 6, 2002, the Magistrate filed Findings of Fact and Conclusions of Law.
 {¶ 5} "This Court will start by stating, it is a firmly established principal of law that a parent has a fundamental right to care for and have custody of his or her child. In re Shaeffer Children (1993),85 Ohio App.3d 683, 621 N.E.2d 426 (citing Santosky v. Kramer (1982),455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599). Indeed, the United States Supreme Court has stated, `it is cardinal with us that the custody, care, and nurture of the child reside first in the parents.' Stanley v.Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-1213, 31 L.Ed.2d 551
(citing Prince v. Massachusetts (1944), 321 U.S. 158, 166, 64 S.Ct. 438,88 L.Ed. 645). Therefore, the termination of parental rights is an alternative of last resort. See In re Wise (1994), 96 Ohio App.3d 619,645, N.E.2d 812.
 {¶ 6} "In deciding whether to grant permanent custody of a child to a party who has so moved, Ohio Revised Code § 2151.414(B)(2) requires a court to grant permanent custody of a child to the moving party `if the court determines in accordance with division (E) of this section that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent,' and determines that permanent custody is in the best interest of the child. O.R.C. § 2151.414(B)(2).
 {¶ 7} "The court must determine by clear and convincing evidence that one or more of the sixteen factors listed in O.R.C. § 2151.414(E) exist in order to find that the child cannot [sic] placed with either parent within a reasonable time or should not by [sic] placed with either parent. O.R.C § 2151.414(E); see also In re William S. (1996),75 Ohio St.3d 95, 661 N.E.2d 738, syllabus (stating that a court must find one of the eight enumerated factors in O.R.C. § 2151.414(E), which has since been amended to include a total of sixteen factors). Once the trial court finds from all relevant evidence that one or more of these factors exist, it then must consider whether permanent custody is in the best interest of the child. See In re Nichole and Nicholas Clever
(2002), 2002 Ohio App. Lexis 5597 at 8; see also In re William S.
(1996), 75 Ohio St.3d 95, 661 N.E.2d 738.
 {¶ 8} "The court must determine that permanent custody is in the best interest of the child by considering all relevant factors, including, but not limited to the five factors listed in O.R.C. § 2151.414(D). Whether permanent custody is in the child's best interest, a trial court, shall consider all relevant factors, including, but not limited to the following:
 {¶ 9} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 10} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 11} "(3) The custodial history of the child;
 {¶ 12} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency. O.R.C. § 2151.414(D).
 {¶ 13} "This Court will address the objections of each party separately. Ms. Tackett raises three (3) main points in her objection: (1) The State did not satisfy its burden of clear and convincing evidence, therefore denying Ms. Tackett constitutional due process; (2) The record supports the conclusion that the parents did not receive adequate protection of their parental rights; and (3) The record supports the conclusion that the Magistrate's Decision is against the manifest weight of the evidence.
 {¶ 14} "In her objection, Ms. Tackett specifies the aforementioned points of objection that this Court finds to be relevant to the entire objection, and therefore this Court will not address each point separately. Specifically, Ms. Tackett asserts that there was an over-emphasis on the fact that suitable adoptive parents were available for said child(ren); Ms. Tackett's intellectual limitations were insufficient to prevent her from parenting her children; Ms. Tackett substantially completed her case plan objectives; Ms. Tackett made significant progress in therapy; Ms. Tackett's financial situation was insufficient to warrant a grant of permanent custody; MSSC failed to make reasonable efforts to alleviate Ms. Tackett's budgetary struggles; and Ms. Tackett made significant progress on her housekeeping case plan objective.
 {¶ 15} "With respect of Izora, the Magistrate specifically noted three (3) factors listed under O.R.C. § 2151.414(E):
 {¶ 16} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 17} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of the section or for the purposes of division (A)(4) of section2151.353 of the Revised Code.
 {¶ 18} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 19} "This Court finds that the magistrate did not rely solely on the fact that there may be suitable adoptive families willing to adopt Curtis and Izora (separately). This Court finds that indeed Ms. Tackett made progress on her case plan objectives, but failed to fully remedy the situation that led to the removal of said children. Ms. Tackett has failed to fully complete her case plan objectives: her attendance for individual counseling was sporadic; she stopped family counseling with Curtis in September 2001, but has attended four sessions since the April 2002 hearing; Ms. Tackett has not been evicted, however she is routinely delinquent with rent payments and has received several eviction notices; she has failed to maintain utility payments.
 {¶ 20} "At the permanent custody hearing, Dr. Michael Pignatiella, psychologist, testified that Ms. Tackett possessed an IQ below normal for a typical adult. Transcripts, April 22, 2002 at 13, hereinafter Tr. Dr. Pignatiella believed a person possessing such borderline IQ as Ms. Tackett, to have limited intellectual skills, but still be functional for adult living. Tr. at 14. In short, it was Dr. Pignatiella [sic] opinion that Ms. Tackett had difficulty parenting Curtis due to her poor problem solving skills and ability to reason. Tr. at 14-15. He also testified that Ms. Tackett's intellectual limitation might prevent her from properly parenting Izora as she grows older. Tr. at 19-20, 30-31. This Court finds that the Magistrate did not rely on Ms. Tackett's intellectual limitations in granting permanent custody, but instead based her decision on Ms. Tackett's inability to properly parent said children. Whether Ms. Tackett's inability to properly parent her children stems from her mental capacity is not crucial to this Court's determination.
 {¶ 21} "Lastly, this Court notes that in 1990 both mother and father had their parental rights involuntarily terminated with respect to a sibling of said child.
 {¶ 22} "Next this Court address [sic] Ms. Tackett's objection with respect to the grant of PPLA for Curtis. Pursuant to O.R.C. § 2151.353, when a child adjudicated abused, neglected, or dependent, the juvenile court may:
 {¶ 23} "(5) Place the child in a planned permanent living arrangement with a public children services agency or private child placing agency, if a public children services agency or private child placing agency requests the court to place the child in planned permanent living arrangement is in the best interest of the child and that one of the following exists:
 {¶ 24} "(a) The child, because of physical, mental, or psychological problems or needs, is unable to function in a family-like settling and must remain in residential or institutional care.
 {¶ 25} "(b) The parents of the child have significant physical, mental, or psychological problems and are unable to care for the child because of those problems, adoption is not in the best interest of the child, as determined in accordance with division (D) of 2151.414 of the Revised Code, and the child retains a significant and positive relationship with a parent or relative.
 {¶ 26} "(c) The child is sixteen years or older, has been counseled on the permanent placement options available to the child, is unwilling to accept or unable to adapt to a permanent placement, and is in an agency program preparing the child for independent living.
 {¶ 27} "This Court notes that the above findings regarding PC of Izora are equally applicable to the Magistrate's grant of PPLA for Curtis. This Court finds that the Magistrate was not convinced by clear and convincing evidence that Curtis may not be able to be placed with Mr. Graves in the reasonable time if family counseling is scheduled. In her Decision the Magistrate noted that Curtis is diagnosed to have ADHD, (combined type) impulsivity and hyperactivity, and has been placed on medication. Curtis's diagnosis contributes to the difficulties he has with home and school. Therefore, this Court finds that the Magistrate properly relied on O.R.C. § 2151.353(5)(a) when granting PPLA for Curtis.
 {¶ 28} "This Court finds that there is sufficient evidence that reunification with mother is not possible within a reasonable time, and that is in the best interest of Izora to have permanency in her life. As to Ms. Tackett's objections, this Court finds that PC for Izora and PPLA for Curtis were just and proper. Thus, this Court hereby OVERRULES Ms. Tackett's objections.
 {¶ 29} "Next, Mr. Graves objects to the Magistrate's Decision claiming that the award PC for Izora to MCCS and the grant of PPLA for Curtis was incorrect and unsupported by the record. Specifically, Mr. Graves asserts that MCCS never intended to reunify said child(ren) with either parent due to the existence of prospective adoptive parents. Mr. Graves claims that he substantially completed his case plan. Further, Mr. Graves claims that a home study of his home was approved and that he regularly visits with said child(ren). Lastly, Mr. Graves asserts that he and Mrs. Graves are fully committed to having said child(ren) in their home.
 {¶ 30} "This Court finds that Mr. Graves' objections are not well taken. After a thorough examination of the record and the objection this Court hereby OVERRULES Mr. Graves' objection. With respect to Izora, the Magistrate specifically noted three (2) [sic] factors listed under O.R.C. § 2151.414(E):
 {¶ 31} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child.
 {¶ 32} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 33} "This Court finds that Mr. Graves has failed to establish a firm commitment to said child(ren). Initially, Mr. Graves was absent during the early part of this case, but once he was discovered, he was given case plan objectives. One case plan objective was to obtain a home study from Cuyahoga County. However, he did not cooperate with Cuyahoga County and they eventually closed their case. Mr. Graves admitted that he was not ready to take the children. Tr. at 153. Mr. Graves provided MCCS the name of a relative to have custody of said child(ren). However, it was not until a home study of that relative failed that Mr. Graves informed the Agency that he wanted custody of said child(ren). Further, Mr. Graves still has not established paternity of Izora as required by his case plan, and he has not paid child support for either child. Further, this Court notes that Mr. Graves' interaction and interrelationship with Izora has not established a significant bond or attachment.
 {¶ 34} "This Court finds the Magistrate's order of PPLA for Curtis was correct. As previously noted, this Court is not convinced by clear and convincing evidence that Curtis cannot be placed with Mr. Graves within a reasonable time if family counseling is scheduled. Further, Curtis is diagnosed to have ADHD, therefore creating a difficulty in family and home settings. Thus, this Court hereby OVERRULES Mr. Graves' objections.
 {¶ 35} "Lastly, this Court will consider the two points of objection raised by MCCS: the Magistrate erred by failing to grant PC of Curtis to MCCS; and The Decision of the Magistrate granting PC of Izora should be upheld. MCCS claims that an award of PC is in the best interest of both children. Specifically, MCCS asserts that Mr. Graves has never shown a commitment to said child(ren), evidenced by his sporadic visitation, failure to establish paternity of Izora and failure to pay any child support. Also, MCCS raises concerns of Curtis' safety and well being if placed with Mr. Graves.
 {¶ 36} "This Court recognizes that Mr. Graves [sic] involvement in these cases may have been delayed, however this Court is not convinced that Curtis cannot be placed with Mr. Graves within a reasonable time if family counseling [sic] conducted. This Court notes that mother and father were both convicted of child endangering over ten (10) years ago, and this Court is not convinced by the evidence presented at the hearing that Mr. Graves poses an on-going danger to Curtis. Therefore, this Court hereby OVERRULES MCCS's objection with respect to Curtis.
 {¶ 37} "In sum, this Court hereby SUSTAINS both the Magistrate's grant of PC of Izora to MCCS and the grant of PPLA for Curtis. With the above determination, the Court hereby adopts the Decision of the Magistrate, as its own, with all the provisions and requirements contained herein, and hereby makes the same the ORDER OF THIS COURT.
 {¶ 38} "IT IS SO ORDERED."
 {¶ 39} The appellant's brief sets forth the following sole assignment of error:
 {¶ 40} "The trial court's decision to deny montgomery county children's services' motion for permanent custody was against the manifest weight of the evidence."
 {¶ 41} This court has pointed out that in child custody cases, the focus and decision must be on what is in the child's best interest. The trial court's discretion should be given "the utmost respect, given the nature of the proceedings and the impact the court's determination will have on the lives of the parties concerned." In Re: Clever (Oct. 18, 2002), Montgomery App. No. 19298 and 19299. This court further has stated that where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the manifest weight of the evidence by a reviewing court. Id.
 {¶ 42} We have reviewed the entire record of the transcripts of both hearings and we find that the trial court's decision was supported by a substantial amount of competent, credible evidence. We recognize some cogent arguments set forth by the appellant against the decision, and it makes for a rather close case, but the trial court's discretion is even more important in a close case than in a lopsided one. We note further that the trial court's decision not to grant permanent custody at this time leaves the possibility open for the future and the possibility of Curtis being reunited with his father is also open for the future and has not made a permanent arrangement as of this date.
 {¶ 43} The sole assignment of error is overruled, and the judgment is affirmed.
Brogan, P.J. and Fain, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).